SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
ANNE KRAMER (SBN 315131)
(akramer@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiff John Rogers,*
*on behalf of himself and all others similarly situated*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROGERS, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>LYFT, INC.,<br><br>    Defendant | Case No. 3:20-cv-01938<br><br>**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**<br><br>Complaint Filed: March 12, 2020<br>Trial Date: None Set |

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION
FOR PRELIMINARY INJUCTION**

1

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2

    **PLEASE TAKE NOTICE** that Plaintiff John Rogers will and hereby moves for an

3

emergency preliminary injunction enjoining Defendant Lyft, Inc. from misclassifying Plaintiff

4

and all others similarly situated, namely all other individuals working as Lyft drivers in

5

California, as independent contractors and thereby denying these workers their rights under the

6

Labor Code, including state-mandated paid sick leave in violation of Cal. Lab. Code § 246.

Plaintiff seeks this preliminary injunction on an emergency basis due to the global pandemic of

7

COVID-19 (the "coronavirus"). This crisis starkly demonstrates the harm that Lyft's

8

misclassification of its drivers is causing, not only to Lyft drivers but also to Lyft passengers and

9

the general public, as drivers are deprived of an important workplace protection to which they

10

are entitled as employees and which is designed to protect public health.  Lyft's failure to

11

provide paid sick leave as mandated by state law means Lyft drivers will need to work while sick

12

to make ends meet and substantially increases the likelihood Lyft drivers will spread illnesses to

the general public.  Thus, Plaintiff respectfully requests that this Court enjoin Lyft from

13

misclassifying its drivers as independent contractors and begin complying with California

14

employee protections and provide state-mandated paid sick leave.  Doing so immediately is

15

essential to avoiding imminent harm to Lyft drivers, as well as the general public.

16

17

Dated: March 19, 2020               Respectfully submitted,

18

                                 JOHN ROGERS, individually and on behalf of all
others similarly situated,

19

                                 By his attorney,

20

                                 _____*/s/ Shannon Liss-Riordan*_____

21

                                 Shannon Liss-Riordan (SBN 310719)
LICHTEN & LISS-RIORDAN, P.C.

22

23

24

                 **PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION
FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 8

III.    ARGUMENT ................................................................................................................... 9

        A.      The Court Should Grant Plaintiff's Motion for a Preliminary
                Injunction ............................................................................................................ 9

                1.      Plaintiff is Likely to Prevail on the Merits ................................................ 10

                2.      Lyft Drivers, as well as the Public, Will Suffer Interim Harm
                        Greater than that of Lyft Should a Preliminary Injunction Not
                        Issue ...................................................................................................... 13

                3.      The Balance of Hardships Tips Sharply in Plaintiff's Favor .................... 16

                4.      An Injunction is in the Public Interest ...................................................... 17

IV.     CONCLUSION ............................................................................................................. 17

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

Alliance for the Wild Rockies v. Cottrell

4
   632 F.3d 1127 (9th Cir. 2011) ................................................ 9

Arizona Dream Act Coalition

5
   757 F.3d 1053 (9th Cir. 2014) .............................................. 13

6
Brantley v. Maxwell–Jolly
   656 F.Supp.2d 1161 (N.D. Cal.2009) ...................................... 6

7
Broughton v. Cigna Healthplans of California
   21 Cal. 4th 1066 (1999) ...................................................... 12

8
Carey v. Gatehouse Media Massachusetts I, Inc.,
   92 Mass. App. Ct. 801 (Mass. App. Ct. 2018) ........................ 14

9

10
Chalk v. U.S. Dist. Court Cent. Dist. of California
   840 F.2d 701 (9th Cir. 1988) ............................................... 16

11
Chhoeun v. Marin
   306 F. Supp. 3d 1147 (C.D. Cal. 2018) ............................... 6, 7

12
Clifford v. Quest Software Inc.
   38 Cal. App. 5th 745 (Ct. App. 2019) .............................. 12, 13

13
Cotter v. Lyft,
   60 F.Supp.3d 1067 (N.D. Cal. 2015) ................................ 7, 14

14
Cunningham v. Lyft, Inc.
   Case No. 1:19-cv-11974-IT (D. Mass.) ................................... 8

15
Doe v. Trump

16
   2019 WL 6324560 (D. Or., Nov. 26, 2019) ............................. 7

17
Dynamex Operations W., Inc. v. Superior Court
   4 Cal. 5th 903 (2018) ................................................... passim

18
Fish v. Kobach
   189 F. Supp. 3d 1107 (D. Kan. 2016) ..................................... 6

19
Gooch v. Life Inv'rs Ins. Co. of Am.

20
   672 F. 3d 402 (6th Cir. 2012) ............................................... 6

21
Hamama v. Adducci
   261 F. Supp. 3d 820 (E.D. Mi. 2017) ..................................... 6

22
Hamama v. Adducci
   912 F. 3d 869 (6th Cir. 2018) ............................................... 6

23
Johnson v. VCG-IS, LLC
   Case No. 30-2015-00802813-CU-CR-CXC (Cal. Sup. Ct. Sept. 5, 2018)............................ 11

24

Just Film, Inc. v. Merchant Services, Inc.
    474 Fed. Appx. 493 (9th Cir. 2012)........................................................ 7

Lavan v. City of Los Angeles
    797 F. Supp. 2d 1005 (C. D. Cal. 2011) ................................................ 6

Lee v. Orr
    2013 WL 6490577 (N.D. Ill. 2013) ........................................................ 7

Massachusetts Delivery Ass'n. v. Coakley
    2014 WL 4824976 (1st. Cir. Sept. 30, 2014)........................................ 10

McGill v. Citibank, N.A.,
    2 Cal. 5th 945 (2017) ................................................................. 5, 7, 12

National Organization for Reform of Marijuana Laws (NORML) v. Mullen
    608 F. Supp. 945 (N.D. Cal. 1985)........................................................ 6

Nieto v. Fresno Beverage Co., Inc.
    33 Cal. App. 5th 274 (2019) .................................................................. 5

O'Connor v. Uber Technologies, Inc.
    82 F. Supp. 3d 1133 (N.D. Cal. 2015).................................................... 4

Oliveira v Advanced Delivery Sys., Inc.
    2010 WL 4072360 (Mass. Super Jul. 16, 2010) .................................... 11

People of the State of California v. Maplebear, Inc.
    Case No. 2019-48731 (Cal. Sup. Ct. Feb. 18, 2020) .................... passim

Planned Parenthood of Kansas v. Andersen
    882 F.3d 1205 (10th Cir. 2018) .............................................................. 7

Planned Parenthood of Kansas v. Mosier
    2016 Wl 3597457 (D. Kan. July 5, 2016)............................................... 7

Price v. City of Stockton
    390 F.3d 1105 (9th Cir. 2004) ............................................................... 7

Rittman v. Amazon
    383 F. Supp. 3d 1196 (W.D. Wash. 2019) ............................................. 5

Robinson v. Jardine Ins. Brokers Intern. Ltd.
    856 F. Supp. 554 (N.D. Cal. 1994)....................................................... 16

Rodriguez v. Providence Cmty. Corr., Inc.
    155 F. Supp. 3d 758 (M.D. Tenn. 2015)................................................. 7

Rogers v. Lyft, Inc.
    CGC-20-583684 (Cal. Sup. Ct.) ............................................................ 1

Schwann et al v. FedEx Ground Package Sys., Inc.
    2013 WL 3353776 (D. Mass. July 3, 2013) .......................................... 10

Singh v. Uber Techs.
    2019 WL 4282185 (3rd Cir., Sept. 11, 2019)......................................... 5

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION
FOR PRELIMINARY INJUNCTION**
iii

Thomas v. Johnston
 557 F.Supp. 879 (W.D.Tex.1983) ........................................................ 7

V.L. v. Wagner
 669 F. Supp. 2d 1106 (N.D. Cal. 2009) ................................................ 6

Waithaka v. Amazon
 2019 WL 3938053 (D. Mass., Aug. 20, 2019) ........................................ 5

Zepada v. INS
 753 F.2d 719 (9th Cir. 1985) ............................................................... 7

Zinser v. Accufix Research Institute, Inc.
 253 F. 3d 1180 (9th Cir. 2001) ............................................................. 7

**Statutes**

2014 California Assembly Bill No. 1522
 California 2013–2014 Regular Session, § 1(e) ........................................ 11, 18, 21

2019 California Assembly Bill No. 5
 California 2019–2020 Regular Session § 1(e) ........................................ 18

Cal. Lab. Code § 246 .......................................................................... passim

Emergency Paid Sick Leave Act, H.R. 6201 – 2
 116th Congress § 5101 (2020) .............................................................. 6

Fed. R. Civ. P. 65 .............................................................................. 13

Federal Arbitration Act ("FAA")
 9 U.S.C. § 1 ..................................................................................... 9, 12

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION
FOR PRELIMINARY INJUNCTION**

**PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

## I.    INTRODUCTION

Plaintiff John Rogers seeks an emergency preliminary injunction enjoining Defendant Lyft, Inc. ("Lyft") from misclassifying its drivers as independent contractors when they are actually employees under California law.  Because of this misclassification, Lyft is in particular violating Cal. Lab. Code § 246 by failing to provide the drivers with paid sick leave – which will exacerbate the global health crisis of COVID-19 (the "coronavirus") and which requires immediate emergency redress.[1]  This motion should be adjudicated forthwith, both because it seeks a preliminary injunction (and not a final adjudication on the merits)[2] and because of the manner in which Lyft's ongoing refusal to recognize its drivers as employees and provide state-mandated paid sick leave compounds the public health crisis and irreparably harms Lyft drivers, passengers, and the general public.

---

[1]    Plaintiff originally filed this case in California Superior Court on March 12, 2020, see Dkt. 1-4.  Plaintiff filed an *ex parte* application on March 16, 2020, seeking the same emergency preliminary injunctive relief that Plaintiff seeks here. See Rogers v. Lyft, Inc., (Cal. Sup. Ct.) CGC-20-583684, Plaintiff's *Ex Parte* Application for Emergency Preliminary Injunction.  An *ex parte* hearing date was set for March 18, 2020, at 11:00 a.m. PST.  Lyft waited until the moment the hearing was starting to remove the case to federal court. See Dkt. 1.  All parties appeared for the *ex parte* date, including the presiding judge, to discover that, due to the removal, the application would not be heard.

Plaintiff therefore now submits an emergency motion for preliminary injunction pursuant to the Federal Rules of Civil Procedure.  Plaintiff urges the Court that the procedural issues, including removal, not be allowed to delay adjudication of Plaintiff's emergency motion, which was first filed March 16, 2020, and respectfully requests that this Motion be heard forthwith.

[2]    Because a preliminary injunction is not a final adjudication on the merits, it can and should be decided before the Court determines any issues regarding enforceability of Lyft's arbitration agreement.  Plaintiff anticipates that Lyft will argue that the Court cannot issue a preliminary injunction because he and other Lyft drivers are bound by an arbitration agreement.  However, just last month, a California court issued a preliminary injunction prohibiting the gig economy company "Instacart" from misclassifying its workers, despite the fact that the company had already filed a motion to compel arbitration (and deferring consideration of the motion to compel arbitration).  See People of the State of California v. Maplebear, Inc., Case No. 2019-48731 (Cal. Sup. Ct. Feb. 18, 2020), at *2 (Ex. 3 to Declaration of Shannon Liss-Riordan ("Liss-Riordan Decl.")).  Moreover, the unique urgency of the circumstances compel immediate consideration and timely adjudication of the Plaintiff's emergency motion for preliminary injunction, as a federal court in Massachusetts addressing this same issue has already concurred. See Liss-Riordan Decl., Ex. 4.

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION**
**FOR PRELIMINARY INJUNCTION**

The urgency of the circumstances is undeniable.  The World Health Organization has classified the coronavirus as a pandemic, California has declared a state of emergency, and San Francisco – and now all of California - is in the midst of a shelter-in-place – with an exception made for "gig economy" workers, including Lyft drivers. Declaration of Shannon Liss-Riordan (Liss-Riordan Decl.) ¶¶ 8, 10.[3]  Lyft drivers are on the front lines of this crisis (driving residents where they need to go for essential services and allowing them to avoid public transportation), yet they are not even receiving the benefits of California's state-mandated labor protections because of their misclassification as independent contractors.

Because Lyft does not provide them state-mandated paid sick leave (and because they are among the few essential workers permitted to work even during the shelter-in-place order), Lyft drivers who cannot afford to not work will *continue* to work despite feeling sick. In the words of one Lyft driver:

> I can't self-quarantine because not working is not an option. If I don't make enough money, I can't feed my children for the next six weeks. I'm not stopping, fever or no fever. And that's what most other gig workers would do too, because none of us makes enough money to save up for an emergency like this.

Id. ¶ 15.  This driver is not alone.  Gig Workers Rising recently sent a letter to Governor Gavin Newsom and other state officials, asserting that "Lyft. . . and other gig economy companies are putting drivers and passengers at risk during coronavirus," by refusing to classify Lyft drivers as employees and provide them with basic employee protections. Id. ¶ 16.[4]

Lyft drivers may drive **dozens** of passengers (including those who have been ordered to self-quarantine) each day – and are clearly not able to maintain the six foot distance

---

[3]     Government mandates are rapidly changing in response to the crisis, and these orders are as of this writing.  In recognition of the threat to public health as a result of employers denying paid sick leave during this pandemic, Congress just passed emergency legislation that attempts to address the issue.  See Emergency Paid Sick Leave Act, H.R. 6201 – 2, 116th Congress § 5101 (2020). The federal Act will not cover Lyft drivers if they are not recognized as employees and because of the exemption for large employers. Liss-Riordan Decl. ¶ 2, 13.  However, the state of emergency that led Congress to take this historic action only further confirms the need for immediate enforcement of any additional state law protections already in place.

[4]     In support, one worker confirmed: "Sickness is not an option for me because not working is not an option. If I do get sick, I will have to continue to work. . ." Id.

recommended by experts to prevent the rapid spread of COVID-19 (the "coronavirus"). Id. ¶ 17. Thus, in the face of this global crisis, there appears a resounding consensus: "Companies that do not pay sick workers to stay home are endangering their workers, their customers and the health of the broader public." Id. ¶ 17. California already has on the books a paid sick leave law, and the only thing standing in the way of Lyft drivers receiving this critical benefit is Lyft's refusal to acknowledge that its drivers are employees under California law.[5]

The crisis has revealed the dire consequence of drivers being deprived basic employee protections and increased the urgency of the need for relief – both for themselves and the general public. Under these exigent circumstances, as outlined immediately below and further herein, Plaintiff clearly meets the standard for preliminary injunction, and the relief requested is appropriate at this stage.

This Court should grant this motion for a preliminary injunction because Plaintiff meets the four factors considered under Fed. R. Civ. P. 65(a) and (b), the Court should grant Plaintiff's motion.

**First**, it is clear that Plaintiff is likely to prevail on the merits of his misclassification claim. Under the conjunctive, three-pronged ABC test announced in Dynamex Operations W., Inc. v. Superior Court, 4 Cal. 5th 903, 956–57 ("Dynamex") (2018), and enacted in A.B. 5, a putative employer bears the burden of satisfying each prong in order to justify classifying workers as independent contractors. See generally Cal. Lab. Code § 2750.3(a)(1) (codifying the "ABC" test). Here, Lyft cannot satisfy Prong B, which requires an alleged employer to prove that the worker performs services outside its usual course of business. Id. While Lyft may attempt to argue that it is merely a technology company, Lyft cannot avoid the inevitable conclusion that it is a transportation company and that it depends upon its drivers to sustain and

---

[5]   Lyft has stated that it plans to provide (an undefined amount of) compensation to drivers who are diagnosed with coronavirus. See Id. ¶ 24.  However, the statute does not require a diagnosis (nor does it allow doctor's note requirement to thwart an employee taking advantage of accrued sick leave); Lyft's new voluntary policy therefore falls short of the requirements of California law.

carry out its transportation business. See Cotter v. Lyft, (N.D. Cal. 2015) 60 F.Supp.3d 1067, 1069 ("[T]he argument that Lyft is merely a platform, and that drivers perform no service for Lyft, is not a serious one");  see also O'Connor v. Uber Techs., Inc., 82 F. Supp. 3d 1133, 1144 (N.D. Cal. 2015) ("[I]t strains credulity to argue that Uber is not a 'transportation company' or otherwise is not in the transportation business.").

Lyft clearly is aware that its drivers must now be classified as employees and receive the protections of the Labor Code: AB 5 and its adoption of the "ABC" test is widely understood as requiring "gig economy" companies such as Lyft to classify their drivers as employees and provide them state-mandated employment protections. Liss-Riordan Decl. Id. ¶ 25.  The bill has even been dubbed the "gig labor bill" and described as "dealing a potential body blow to gig economy players, **like** Uber and **Lyft**." Id. ¶ 26.

Yet, despite the clear message of the state's highest court, its legislature, and the Governor (who signed A.B. 5 into law), Lyft has continued to refuse to acknowledge that its drivers are employees and is now contributing to the global health crisis by denying them state-mandated paid sick leave. Lyft has announced that it, along with two other "gig economy" companies, intends to invest $30 million ($90 million total) in a ballot initiative to overturn or exempt itself from the "ABC" test in A.B. 5, thus acknowledging that it is impacted by the law. Liss-Riordan Decl. ¶ 27.  The issuance of a preliminary injunction based on Plaintiff's likelihood of success under Prong B on these facts is appropriate, as one California Superior Court has already recognized.  See Maplebear, Inc., Case No. 2019-48731, at *4 (Ex. 3 to Liss-Riordan Decl.).[6]

Thus, as Lyft's own actions acknowledge, Lyft will likely fail to satisfy its burden under

---

[6]     In People of the State of California v. Maplebear, Inc., (Cal. Sup. Ct. Feb. 18, 2020) Case No. 2019-48731, at *4 (Ex. 3 to Liss-Riordan Decl.), Judge Taylor ordered the gig economy company Instacart to stop misclassifying its workers ("Shoppers") as independent contractors. In evaluating the preliminary injunction motion, Judge Taylor found that "is it more likely than not that the People will establish at trial that the 'Shoppers' perform a core function of defendant's business" (Prong B) and found that (more likely than not) the People would prevail on the other two prongs (Prongs A and C) of the "ABC" test. Id.

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION
FOR PRELIMINARY INJUNCTION**

**4**

Prong B, and Plaintiff will thus prevail in proving that Lyft, as a consequence, has violated the California paid sick leave law, since Lyft does not even acknowledge its drivers to be employees entitled to the benefit of Cal. Lab. Code § 246.

Lyft will argue that this Court cannot reach this issue because it will attempt to enforce its arbitration provision, thus preventing Plaintiff from pursuing his claim in this Court.  However, the Court should reject this argument on a preliminary injunction basis, since Plaintiff has a likelihood of prevailing in defeating Lyft's anticipated motion to compel arbitration in this case for two reasons.  First, Plaintiff is seeking public injunctive relief, which the California Supreme Court has held cannot be thwarted through use of an arbitration clause. See McGill v. Citibank, N.A. (2017) 2 Cal.5th 945, 962.  Second, Plaintiff intends to show that Lyft drivers are exempt from the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, as they fall within the transportation worker exemption to the Act. See Nieto v. Fresno Beverage Co., Inc. (2019) 33 Cal. App. 5th 274, 276-77; Singh v. Uber Techs., (3rd Cir., Sept. 11, 2019) 2019 WL 4282185.[7]  Besides, as discussed supra, preliminary injunctions may be adjudicated and issued despite a pending motion to compel arbitration. See Maplebear, Inc. Case No. 2019-48731, at *2, 4 (Ex. 3 to Liss-Riordan Decl.).

**Second**, Plaintiff will be able to establish irreparable injury.  Lyft's ongoing refusal to acknowledge its drivers as employees and thereby provide basic state-mandated workplace protections to its drivers poses an imminent, substantial risk of harm to its drivers and to the general public.  Faced with the choice of staying home without pay and risking losing access to housing, food, and other necessities of living, Lyft drivers across California will continue working and risk exposing hundreds of riders on a weekly basis to this deadly disease.

**Third**, as to the balancing of harms, there can be no serious argument that helping prevent the spread of a global pandemic is outweighed by the cost to Lyft of coming into

---

[7]      See also Rittman v. Amazon, 383 F. Supp. 3d 1196, 1201-02 (W.D. Wash. 2019) (Amazon delivery drivers fall under the § 1 transportation worker exemption, as they transport some goods that travel across state lines, even though the drivers themselves do not cross state lines); Waithaka v. Amazon, 2019 WL 3938053, at *2–4 (D. Mass., Aug. 20, 2019) (same).

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION
FOR PRELIMINARY INJUNCTION**

5

compliance with Dynamex, A.B. 5, and Cal. Lab. Code § 246 (which the company will have to inevitably do, whenever the pending misclassification claims are adjudicated). Lyft has simply ignored the pronouncement of the California Supreme Court for nearly two years since the Dynamex decision was issued, and the consequences are being wrought in dire form.

**Fourth**, it is not in the public interest to allow Lyft to continue to misclassify its drivers and inflict public harm on its drivers, passengers, and the general public. Lyft should not be allowed to use litigation tactics (such as procedural delays or moving to compel arbitration) to stall resolution and enforcement of § 246 no matter the consequences. Plaintiffs and the public simply cannot wait years, or even weeks, for Lyft to comply with California's state-mandated paid sick leave law. In the interim, the rapid proliferation of the virus that occurs will be irreversible.

Moreover, this motion should be granted because the preliminary injunction requested in this putative class action is appropriate at this stage. Lyft may attempt to argue that Plaintiff should be denied relief because Plaintiff has brought this case as a putative class action. This argument must be rejected because in the Ninth Circuit, "[d]istrict courts are empowered to grant preliminary injunctions 'regardless of whether the class has been certified.'" Brantley v. Maxwell–Jolly, 656 F.Supp.2d 1161, 1178 n. 14 (N.D. Cal.2009) (citing Schwarzer, Tashima and Wagstaffe, *Federal Civil Procedure Before Trial*, § 10:773 at 10–116 (TRG 2008)).[8] This is

---

[8]      See also Brantley v. Maxwell–Jolly, 656 F.Supp.2d 1161, 1178 n. 14 (N.D. Cal.2009); J.L. v. Cissna, 341 F. Supp. 3d 1048, 1070 (N.D. Cal. 2018) (granting California-wide preliminary injunctive relief prior to class certification); Chhoeun v. Marin, 306 F. Supp. 3d 1147, 1164 (C.D. Cal. 2018) (same, commenting that "an injunction is necessary to forestall harm to putative class members that is likely to transpire before the parties can litigate a motion for class certification"); Lavan v. City of Los Angeles, 797 F. Supp. 2d 1005, 1019 (C. D. Cal. 2011) (granting a class-wide injunction prior to class certification) (internal quotation marks and citation omitted); V.L. v. Wagner, 669 F. Supp. 2d 1106 (N.D. Cal. 2009) (also issuing preliminary injunction in putative class action); National Organization for Reform of Marijuana Laws (NORML) v. Mullen, 608 F. Supp. 945, 963-964 (N.D. Cal. 1985) (same, injunction extended to all similarly situated California residents); see also Hamama v. Adducci, 261 F. Supp. 3d 820, 840 n.13 (E.D. Mi. 2017), vacated on other grounds by Hamama v. Adducci, 912 F. 3d 869 (6th Cir. 2018) (preliminary injunction ordered prior to class certification noting that "the Sixth Circuit has held that 'there is nothing improper about a preliminary injunction preceding a ruling on class certification.'" (quoting Gooch v. Life Inv'rs Ins. Co. of Am., 672 F. 3d 402, 433 (6th Cir. 2012)); Fish v. Kobach, 189 F. Supp. 3d 1107, 1147-1148 (D. Kan. 2016)

particularly true under exigent circumstances. See, e.g., Doe v. Trump, 2019 WL 6324560, at

*22 (D. Or., Nov. 26, 2019) (issuing preliminary injunction in putative class action).[9]

Preliminary injunctive relief is also appropriate at this stage regardless of Lyft's

anticipated argument that most of its drivers are subject to arbitration clauses, as discussed supra

regarding the first factor, supra pp. 4-5. Plaintiff here may rely on McGill v. Citibank, N.A., 2

Cal. 5th 945, 955 (2017), as this request for a preliminary injunction is to benefit both the drivers

---

("case law supports this Court's authority to issue classwide injunctive relief based on its general
equity powers before deciding the class certification motion"); Planned Parenthood of Kansas v.
Mosier, 2016 WL 3597457, at *26 (D. Kan. July 5, 2016) aff'd in part, vacated in part sub nom.
Planned Parenthood of Kansas v. Andersen, 882 F.3d 1205 (10th Cir. 2018) ("case law supports
this Court's authority to issue classwide injunctive relief based on its general equity powers
before deciding a class certification motion"); Rodriguez v. Providence Cmty. Corr., Inc., 155 F.
Supp. 3d 758, 767 (M.D. Tenn. 2015) (granting classwide injunctive relief, prior to certification
of class, noting "'[a] district court may, in its discretion, award appropriate classwide injunctive
relief prior to a formal ruling on the class certification issue based upon either a conditional
certification of the class or its general equity powers" (quoting Thomas v. Johnston, 557 F. Supp.
879, 917 (W.D.Tex.1983)); Lee v. Orr, 2013 WL 6490577 at *1 (N.D. Ill. 2013) ("District
courts have the power to order injunctive relief covering potential class members prior to class
certification. The court may conditionally certify the class or otherwise order a broad preliminary
injunction, without a formal class ruling, under its general equity powers. The lack of formal
class certification does not create an obstacle to classwide preliminary injunctive relief when
activities of the defendant are directed generally against a class of persons") (internal quotation
marks and citations omitted).

[9] Defendant may cite Zepada v. INS, 753 F.2d 719, 728 n. 1 (9th Cir. 1985) for the
proposition that this authority is limited, except in the case of narrow exceptions. However,
Zepada does not stand for the broad proposition that preliminary injunctions cannot be granted
prior to class certification. See Chhoeun v. Marin, 306 F. Supp. 3d 1147, 1164 (C.D. Cal. 2018)
("Zepada only stands for the proposition that after a motion to certify a class was expressly
denied, the court was limited to entering an injunction only as to the individual plaintiffs. Id. at
727. Zepada does not apply where, as here, an injunction is necessary to forestall harm to
putative class members that is likely to transpire before the parties can litigate a motion for class
certification.").

Besides, even Zepada provides for the possibility that a preliminary injunction may issue
in a putative class action when the relief sought for the individual is inevitably identical to the
relief sought for the putative class. Zepada, 753 F.2d 719, 728 n. 1. See also Just Film, Inc. v.
Merchant Services, Inc., 474 Fed. Appx. 493, 495 (9th Cir. 2012) (affirming issuance of
preliminary injunction in putative class action, in part because "plaintiff has shown that a class-
wide injunction is necessary to remedy the alleged class-wide harm"); Price v. City of Stockton,
390 F.3d 1105, 1117-18 (9th Cir. 2004) (affirming issuance and scope of preliminary injunction).
Furthermore, Plaintiff pursues a sole claim that primarily seeks declaratory and injunctive relief,
which would lend itself to a Rule 23(b)(2) class. See Zinser v. Accufix Research Institute, Inc.,
253 F. 3d 1180, 1196 (9th Cir. 2001).

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION**
**FOR PRELIMINARY INJUNCTION**

*and the public*,[10] and Plaintiff intends to show that Lyft drivers are exempt from the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, as they fall within the transportation worker exemption to the Act.  Lyft simply should not be allowed to wield its arbitration agreement to delay urgently needed relief, [11] nor does the law require that this Court defer adjudication of a preliminary injunction pending a determination on the enforceability of the arbitration agreement.

For the foregoing reasons, and as set forth further below, this Court should issue an emergency preliminary injunction enjoining Lyft from misclassifying its drivers, so that they will receive the protections of California law, including paid sick leave, so as to prevent irreparable, interim harm to Lyft drivers and the general public.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 2020, Plaintiff brought this case on behalf of himself and other Lyft drivers throughout California, alleging that Lyft has misclassified its drivers as independent contractors, when in reality they are employees of Lyft and therefore entitled to employment protections under the California Labor Code, including paid sick leave.  See Complaint ¶ 2 (Ex. 1 to Liss-

---

[10]     When it passed its paid sick time policy, the California State Legislature recognized that "*paid sick days will have an enormously positive impact on the public health of Californians by allowing sick workers paid time off to care for themselves . . . reducing the likelihood of spreading illness to other members of the workforce*." 2014 California Assembly Bill No. 1522, California 2013–2014 Regular Session, § 1(e) (emphasis supplied).  Even apart from the COVID-19 crisis, this protection is designed to benefit the public.  The pandemic has only made increased the clarity that enforcement of this employee protection is for the public benefit and is urgently needed.

[11]     In Cunningham v. Lyft, Inc., Case No. 1:19-cv-11974-IT (D. Mass.), ECF No. 75 (filed March 13, 2020), Plaintiffs' counsel (same as undersigned) also filed an emergency motion for a preliminary injunction seeking to enjoin Lyft from misclassifying its drivers as independent contractors under the Massachusetts "ABC" test and thus illegally depriving drivers state-mandated sick leave during this crisis.  Judge Indira Talwani held a telephonic conference with the parties on March 16, 2020, to discuss an orderly briefing schedule.  In responding to Lyft's request for a determination *first* on Lyft's pending Motion to Compel Arbitration (ECF Nos. 16-17), Judge Talwani indicated that she intended to adjudicate the emergency motion for preliminary injunction first, given the urgency of the circumstances, which were distinct from an earlier filed motion for preliminary injunction in that case. Liss-Riordan Decl. ¶ 30, Ex. 4 at 13, 17 ("when we were here in the fall and December [] there was a slightly more theoretical irreparable harm and concern. I'm sitting here with … the courtroom blocked with this issue of – the public health issue being raised. It may be that plaintiff has no relief available, but the urgency of briefing the issue, I have a hard time not being impacted by the urgency of the situation around us.").

Riordan Decl.).  Plaintiff is an adult resident of North Hollywood, California, where he has worked as a Lyft driver since November 2014.  Id. ¶ 7. Lyft has misclassified Plaintiff and other Lyft drivers as independent contractors. Id. ¶ 24.  Because Lyft drivers are in fact employees, they are entitled to paid sick days under Cal. Lab. Code § 246.  Lyft has violated this provision by, as a matter of policy, failing to provide paid sick days to its drivers as required by California law.  Id. ¶ 30.

Shortly after filing the complaint, Plaintiff filed an *ex parte* application for an emergency preliminary seeking the same relief sought here, on March 17, 2020.  Rogers, CGC CGC-20-583685.  Today, March 19, 2020, Lyft removed the case to federal court, see Dkt. 1, and Plaintiff now renews his motion for an emergency preliminary injunction before this Court.

**III.   ARGUMENT**

**A. The Court Should Grant Plaintiff's Motion for a Preliminary Injunction**

Under Fed. R. Civ. P. 65(a) and (b), in order to prevail on a motion for a preliminary injunction, Plaintiff must establish that he has raised "serious questions" going to the merits of their claim, that they are likely to suffer irreparable harm, that the balance of hardships tips sharply in their favor, and that an injunction would be in the public interest.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–39 (9th Cir. 2011).  The Ninth Circuit follows a "sliding scale approach," under which the "elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Id. at 1131.  As set forth below, Plaintiff meets all of these requirements and, moreover, when balanced in conjunction with each other (given the high likelihood of success on the merits and the scale of the harm), compel the issuance of a preliminary injunction.

In light of the COVID-19 outbreak and the state of emergency declared in California, Lyft's continued noncompliance with Dynamex and AB 5—particularly by denying Lyft drivers legally guaranteed paid sick time—poses a significant, imminent risk to Lyft employees and to the general public.  Preliminary injunctions are designed exactly for this situation, where judicial intervention and a court order is required to compel an affirmative act based on the high

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

1  likelihood of plaintiff's success on the merits and to prevent public harm, as discussed below.

2  ### 1. Plaintiff is Likely to Prevail on the Merits

3  Under the stringent "ABC test" adopted in <u>Dynamex</u> and codified in AB 5, workers are

4  presumed to be employees. <u>Dynamex</u>, 4 Cal.5th at 956-57.  The putative employer bears the

5  burden of proving the conjunctive, three-prong test that: "(A) the worker is free from the control

6  and direction of the hiring entity in connection with the performance of the work, both under the

7  contract for the performance of the work and in fact; *and* (B) that the worker performs work that

8  is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily

9  engaged in an independently established trade, occupation, or business of the same nature as the

10  work performed." <u>Id</u>. at 956-57; Cal. Lab. Code § 2750.3.  Lyft cannot meet this difficult

standard.

11  Specifically, Lyft drivers perform services in the usual course of Lyft's business—

12  providing transportation services—and thus Lyft cannot meet prong "B" of the "ABC test."

13  Multiple courts have concluded that drivers and couriers perform services in the "usual course of

14  business" under Prong B of the "ABC" test, even when their employers claim they merely

15  "arrange" rides or deliveries, or try to claim that they are in the "technology" business, rather

16  than the "transportation" industry.  <u>Cotter v. Lyft</u>, (N.D. Cal. 2015) 60 F.Supp.3d 1067, 1069

17  ("[T]he argument that Lyft is merely a platform, and that drivers perform no service for Lyft, is

not a serious one").  Applying Massachusetts law, from which the California Supreme Court

18  adopted the "ABC" test, the First Circuit noted that "[t]here can be no dispute that [couriers] act

19  in the course of business for the delivery companies, even if one performs the deliveries and the

20  other arranges the deliveries."  <u>Massachusetts Delivery Ass'n. v. Coakley</u>, (1st. Cir. Sept. 30,

21  2014) 2014 WL 4824976 at *7.<sup>12</sup>  Applying the "ABC" test now under California law, Judge

---

22  <sup>12</sup>    <u>See also</u> <u>Carey v. Gatehouse Media Massachusetts I, Inc.</u>, (Mass. App. Ct. 2018) 92
Mass. App. Ct. 801, 807, 813–14 (affirming grant of summary judgment to plaintiff delivery
23  drivers under Prong B); <u>Schwann et al v. FedEx Ground Package Sys., Inc.</u>, (D. Mass. July 3,
2013)  2013 WL 3353776, *5 (rejecting defendant's attempt to characterize its business as
24  'logistics' rather than delivery services and noting, "[w]hether intended as shorthand for a more
metaphysical purveyor of logistics business entity or not, FedEx advertises that it offers package

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION**
**FOR PRELIMINARY INJUNCTION**
**10**

Taylor found that Instacart, a grocery delivery service (that similarly describes itself as a technology platform), would be unable to carry its burden under Prong B (or any prong of the test) of proving its Shoppers, who fulfill the grocery orders, are properly classified as independent contractors:

> At this point is it more likely than not that the People will establish at trial that the "Shoppers" perform a core function of defendant's business; that they are not free from defendant's control; and that they are not engaged in an independently established trade, occupation or business. Establishing any one of these would be enough[.]

Ruling on Mot. For Preliminary Injunction, Maplebear, Inc., Case No. 2019-48731, at *4 (Ex. 3 to Liss-Riordan Decl.).  Likewise, a California state court following a litany of Massachusetts case law, granted summary adjudication to plaintiff exotic dancers on the question of "employee status" under Prong B, based on minimal facts and common sense determinations regarding the defendant strip club's usual course of business and the services performed by the plaintiff dancers, despite the defendant's denial that it was in the adult entertainment business. Johnson v. VCG-IS, LLC (Cal. Sup. Ct. Sept. 5, 2018) Case No. 30-2015-00802813-CU-CR-CXC, at *4 (Ex. 2 to Liss-Riordan Decl.).[13]  Here, the Court can similarly make a determination – which only requires at this point a preliminary determination of the _likelihood_ of Plaintiff's prevailing on the merits of the misclassification claims – based on the facts before the Court now.

Because Lyft drivers are employees under the "ABC" test, Lyft drivers are entitled to

---

pick-up and delivery services and its customers have no reason to believe otherwise"); Oliveira v Advanced Delivery Sys., Inc., (Mass. Super Jul. 16, 2010) 2010 WL 4072360, *6-7 (rejecting defendant employer's claim that it was in the business of outsourcing the home delivery of furniture for retail furniture sellers rather than in the business of delivering furniture).

[13]   In analyzing Prong B, the court stated:

> [P]laintiffs established, and there can be no real dispute, that Imperial Showgirls operates an adult entertainment establishment whose primary purpose is to permit patrons to watch and pay for particular services, such as "lap dances," from exotic dancers like the two plaintiffs in this case. Imperial Showgirls holds itself out as a "strip club" and the exotic dancers who perform there, including plaintiffs, are central to the defendant's business--both literally and figuratively as plaintiffs point out. The entire business of Imperial Showgirls centers around exotic dancers performing for defendant's customers. That aspect of defendants' business simply would not survive without them.

Johnson, Case No. 30-2015-00802813-CU-CR-CXC, at *4 (internal citations omitted).

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION
FOR PRELIMINARY INJUNCTION**
**11**

paid sick leave days under Cal. Lab. Code § 246.  This provision requires employers to allow employees to accrue sick days at the rate of not less than one hour for every thirty hours worked after working for the employer for 30 days within a year from the start of their employment. Because Lyft does not even acknowledge its drivers to be employees, it does not pretend to be complying with the paid sick leave provision of Cal. Lab. Code § 246.[14]  Accordingly, Plaintiff has demonstrated a likelihood of success on the merits.  Absent court intervention, however, Lyft drivers and the public will suffer interim harm greater than Lyft would suffer from having to comply with the law.

Lyft may attempt to thwart or forestall pursuit of preliminary injunctive relief by wielding its arbitration agreement. However, this preliminary injunction cannot be thwarted by an arbitration agreement because it seeks public injunctive relief.  Public injunctive relief "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." McGill v. Citibank, N.A., 2 Cal. 5th 945, 955 (2017) (quoting Broughton v. Cigna Healthplans of California, 21 Cal. 4th 1066, 1077 (1999)).  Lyft may cite to Clifford v. Quest Software Inc., 38 Cal. App. 5th 745, 755 (Ct. App. 2019), review denied (Nov. 13, 2019), in an attempt to argue that a preliminary injunction request, such as that brought by Plaintiff here, seeking to enforce the California wage and hour laws provides mere "incidental benefit to the public from ensuring [the employer's] compliance with wage and hour laws," and therefore does not come under McGill.  However, while Plaintiff disputes this conclusion more broadly, here the facts are clearly distinguishable: this is plainly a request for public relief as its primary aim is to enable Lyft drivers to

---

[14]     Lyft may attempt to argue that its policy issued on Wednesday, March 11, 2020, in light of the emergent crisis, somehow mitigates its violation of § 246. This argument must fail.

**(1)** The policy does not comply with the statute as it requires a driver to obtain a COVID-19 diagnosis or be put under quarantine and merely states it will provide "funds" for drivers (rather than guaranteeing pay). COVID-19 tests are in notably short supply, such that receiving the official diagnosis or quarantine Lyft requires for this "benefit" is exceedingly unlikely. Liss-Riordan Decl. ¶24. **(2)** The policy does nothing to mitigate the public harm as public health recommendations advise to stay home *as soon as* a person begins feeling sick, and to maintain a six foot distance to prevent the spread of COVID-19, which Lyft drivers cannot do in close quarters with passengers.

receive the protection of state-mandated paid sick leave pursuant to California wage and order laws *in order to protect the public* by providing Lyft drivers the means to stay home when sick and thus prevent the spread of the coronavirus.  This request is not analogous to the preliminary injunctions sought in Clifford.  The advent of the coronavirus pandemic presents an unprecedented public health risk that requires enforcement of state law protections already in place in order to serve the public good.[15]

### 2. Lyft Drivers, as well as the Public, Will Suffer Interim Harm Greater than that of Lyft Should a Preliminary Injunction Not Issue

The second factor is whether the plaintiff will suffer irreparable harm in the absence of a preliminary injunction. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." Arizona Dream Act Coalition, 757 F.3d 1053, 1068 (9th Cir. 2014).

Irreparable, potentially catastrophic harm to Lyft drivers and to the general public will result from Lyft and other companies' ongoing misclassification of their employees.  The WHO has confirmed that we are in the midst of a global pandemic. Liss-Riordan Decl. ¶ 8.  In California alone—as of this writing—there are 978 confirmed cases of COVID-19, with 19 confirmed deaths, while thousands of residents may have already been exposed to the disease. Id. ¶ 10.  California has declared a state of emergency, and the State Department of Public Health is urging all to avoid close contact with people who are sick and to stay "away from work, school, or other people if you become sick with respiratory symptoms like fever and cough." Id. at ¶¶ 9, 11.  Just this evening, the Governor issued a state-wide shelter in place in California. Id. ¶ 12.  However, gig workers are excluded from the order, as residents are still allowed to take Uber and Lyft rides for essential travel, demonstrating how Lyft drivers are providing essential

---

[15]   Further, as discussed supra p. 5, Plaintiff disputes that he or other Lyft drivers can be compelled to arbitration their claims because they fall within the § 1 transportation worker exemption to the FAA.

transportation services to the city and highlighting how Lyft drivers who are sick are poised to become vectors of the disease.

Yet, by continuing to misclassify its drivers, Lyft is failing to provide them the basic workplace protections—to which they are legally entitled—which would enable them to comply with public health directives.  There can be no question that enforcing employee protections, already in place, would increase safety for both Lyft drivers and the general public.  Even in ordinary circumstances, Lyft's failure to provide its drivers these basic workplace protections unacceptably increases the likelihood that its drivers and passengers will get sick and spread illnesses.  In the current climate, denying workers these protections poses an intolerable risk to the health and safety of Lyft's employees, its customers, and the public at large.

The connection between public health and the availability of basic employment protections like paid sick days and leave policies is well established. Id. ¶ 19. A recent study found a that state-mandated access to paid sick leave policies reduced population-level flu infection rates by an average of eleven percent within the first year of the implementation of such laws. Id. ¶ 20.  Unsurprisingly, low-wage workers are the most likely to lack these basic workplace protections, id. ¶ 22. Without the protections afforded by these and other workplace laws, workers like Lyft drivers are more likely to work while they are sick, increasing the likelihood they will transmit illnesses among the general public. Id.  Because they also lack the protection of other workplace protections like minimum wage and overtime laws, misclassified workers have no choice but to continue working while sick to make ends meet. Id

Recognizing this connection between paid sick time policies and public health, California requires employers to provide their employees paid sick time. Cal. Lab. Code § 246.  When it passed its paid sick time policy, the Legislature recognized that "*paid sick days will have an enormously positive impact on the public health of Californians by allowing sick workers paid time off to care for themselves . . . reducing the likelihood of spreading illness to other members of the workforce*." 2014 California Assembly Bill No. 1522, California 2013–2014 Regular Session, § 1(e) (emphasis supplied).  And when it passed AB 5, the legislature made clear that it

1   intended to ensure that misclassified workers gained access to these basic workplace protections.

2   It noted that AB 5 would ensure that workers who are "currently exploited by being

3   misclassified" would gain access to "the basic rights and protections they deserve under the law,

4   including . . . *paid sick leave* and paid family leave." 2019 California Assembly Bill No. 5,

5   California 2019–2020 Regular Session § 1(e) (emphasis added).  It is clear, then, that but-for

6   Lyft's ongoing misclassification of its drivers in violation of AB 5, Lyft drivers would be granted

    this vital protection of paid sick leave.

7            In the context of a global pandemic, Lyft's ongoing refusal to provide basic workplace

8   protections to its drivers poses an imminent, substantial risk of harm to its drivers and to the

9   general public.  Faced with the choice of staying home without pay and risking losing access to

10  housing, food, and other necessities of living, Lyft drivers across California will continue

11  working and risk exposing hundreds of riders on a weekly basis to this deadly disease.

12           Lyft drivers may drive **dozens** of passengers each day – and are clearly not able to

13  maintain the six foot distance recommended by experts to prevent the rapid spread of COVID-19

14  (the "coronavirus"). Liss-Riordan Decl. ¶ 17.  Numerous health authorities, including the CDC,

15  recognize that an essential component of mitigating the spread of such illnesses is the ability to

16  self-quarantine and practice social distancing upon the onset of symptoms. Id. at ¶ 17.  Such

17  protective measures are key to "flattening the curve" of the rate of infection so as to avoid

18  overwhelming available health care resources. Id.  The availability of paid sick leave protections

19  is essential to the success of such social distancing strategies.[16]  Even though they are the

20  workers most likely to lack—or, as here, be illegally denied—state-mandated sick leave

21  protections, Lyft drivers and other service workers are at higher risk of spreading such illnesses

22  _____

[16]      Indeed, studies have linked the dearth of paid sick leave policies in the United States with
23  negative health outcomes during the 2009–10 H1N1 outbreak. Id. at ¶ 18.  The American Public
    Health Association estimates an additional 7 million people were infected and 1,500 deaths due
24  to contagious employees who did not (or could not) stay home from work to recover. Id.

because they regularly come into contact with the general public in the course of their work. Id. ¶ 22. The health of Lyft drivers, consumers, and the general public thus requires immediate injunctive relief to reduce the rate at which this deadly disease spreads by ensuring Lyft drivers have access to workplace protections that will realistically allow them to comply with essential public health directives.

### 3. The Balance of Hardships Tips Sharply in Plaintiff's Favor

Finally, the balance of hardships tips sharply in Plaintiff's favor. In considering this factor, the Court should consider whether the injuries of Plaintiff and the class would outweigh any harm to Lyft. See Chalk v. U.S. Dist. Court Cent. Dist. of California, 840 F.2d 701, 710 (9th Cir. 1988). In calculating hardship, courts must "consider the impact of the proposed preliminary injunction on both parties," including the size and strength of each party. Robinson v. Jardine Ins. Brokers Intern. Ltd., 856 F. Supp. 554, 559 n.20 (N.D. Cal. 1994) (holding that the balance of hardships tipped in employee's favor where employer was a large company with annual revenues of nearly $8 billion).

Lyft is a massive international corporation, which recently received a $24 billion valuation in March of 2019. Id. ¶ 28. If Lyft is enjoined from classifying its drivers as independent contractors and required to provide paid sick days, any financial harm, immediate or otherwise, pales in comparison to that shouldered by its drivers, its passengers, and the general public. For instance, issuing an injunction even absent concerns regarding COVID-19, the Superior Court in San Diego found that the "balance of harms" resulting from Instacart's similar misclassification scheme favored its "Shoppers" and the public as a result of the harms inflicted by the misclassification scheme. See Ruling on Mot. For Preliminary Injunction, Maplebear, Inc., Case No. 2019-48731 (Ex. 3 to Liss-Riordan Decl.). Here, there is no question that any potential "harm" Lyft faces in being required to comply with employment standards in effect since Dynamex was decided two years ago (and A.B. 5 went into effect in January) is drastically outweighed by the public health risk posed by Lyft's ongoing refusal to properly classify and

provide paid sick time to its drivers.

Given the substantial likelihood of success Plaintiff has on the merits of his underlying misclassification claim (and thus resultant paid sick leave claims), Lyft is almost certainly legally required to comply with California's paid sick time law and therefore cannot point to costs due to reclassification (or a change in business model) as a harm that should be weighed in the preliminary injunction analysis. See Maplebear, Inc., Case No. 2019-48731, at *4 (Ex. 3 to Liss-Riordan Decl.) (discounting any costs to Instacart in the preliminary injunction analysis, as the company had two years to come into compliance with the law and cannot now "claim surprise").

### 4.  An Injunction is in the Public Interest

Finally, enjoining Lyft's conduct is in the public interest. As discussed, the irreparable harm suffered by Lyft drivers, passengers, and the general public is enormous.  The legislature has made a clear determination that paid sick time—in the manner it specified by statute—guarantees substantial benefits to workers and benefits public health.  2014 California Assembly Bill No. 1522, California 2013–2014 Regular Session, § 1(e).  Lyft's ongoing noncompliance with that law poses a substantially greater harm to its drivers and to the general public.  Lyft should not get to decide what level of compliance with workplace protections it deems sufficient to serve its employees and the public.

The Court should thus grant an immediate emergency preliminary injunction to require Lyft's compliance with these laws.

## IV.    **CONCLUSION**

For the foregoing reasons, this Court should enjoin Lyft from misclassifying its drivers as independent contractors, thus entitling them to the protections of California wage laws, including paid sick leave.  Doing so immediately is essential to avoiding imminent harm to Lyft drivers, as well as the general public.

Dated: March 19, 2020                        Respectfully submitted,

                                             JOHN ROGERS, on behalf of himself and all others
                                             similarly situated,

                                             By his attorneys,

                                             _/s/ Shannon Liss-Riordan_____
                                              Shannon Liss-Riordan, SBN 310719
                                              Anne Kramer, SBN 315131
                                              LICHTEN & LISS-RIORDAN, P.C.
                                              729 Boylston Street, Suite 2000
                                              Boston, MA 02116
                                              Telephone:    (617) 994-5800
                                              Facsimile:    (617) 994-5801
                                              Emails: sliss@llrlaw.com; akramer@llrlaw.com

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a copy of this document and all supporting documents referenced herein were delivered via electronic filing CM/ECF system to counsel for Defendants on March 19, 2020.

                                             */s/ Shannon Liss-Riordan*_____

                                             Shannon Liss-Riordan, SBN 310719

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION
FOR PRELIMINARY INJUNCTION**