KEKER, VAN NEST & PETERS LLP
RACHAEL E. MENY - # 178514
rmeny@keker.com
R. JAMES SLAUGHTER - # 192813
rslaughter@keker.com
EUGENE M. PAIGE - # 202849
epaige@keker.com
BROOK DOOLEY - # 230423
bdooley@keker.com
IAN KANIG - # 295623
ikanig@keker.com
JASON GEORGE - # 307707
jgeorge@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
LYFT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN ROGERS, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>LYFT, INC.,<br><br>        Defendant. | Case No. 4:20-cv-01938-VC<br><br>**DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY ACTION PENDING RESOLUTION OF ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Pursuant to Federal Arbitration Act §§ 2-4**<br><br>Judge:         Hon. Vince Chhabria<br>Hearing Date:    April 30, 2020<br>Hearing Time:    10:00a.m.<br>Courtroom:     4<br><br>Date Removed:   March 19, 2020<br>Date Filed:      March 12, 2020<br>Trial Date:       TBD |

**LYFT, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY ACTION PENDING RESOLUTION OF ARBITRATION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 30, 2020,[1] at 10:00a.m. or as soon thereafter as this matter can be heard before the Honorable Vince Chhabria, in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, California, 94102, Defendant Lyft, Inc. ("Lyft") will and hereby does move to compel individual arbitration of this action and stay this action pending resolution of that arbitration.

Lyft respectfully moves this Court to compel individual arbitration of Rogers's sole claim under California Labor Code § 246, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA").  Rogers entered into an agreement with Lyft that requires arbitration on an individual basis of all claims and disputes with Lyft, including the claim he has asserted in this action.  The FAA mandates enforcement of Rogers's agreement to arbitrate.  Indeed, any disputes concerning the arbitrability of Rogers's claims (including disputes about the scope, applicability, enforceability, or validity of the agreement) must be decided by an arbitrator, not by this Court. Further, Lyft moves to stay this action pending the resolution of arbitration under 9 U.S.C. § 3.

This motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declaration of Neil Shah; the Declaration of Jeannie Lieu; the Declaration of R. James Slaughter; the Proposed Order; the pleadings, records, and other papers on file in this action; and any further evidence or arguments as may be presented at or before hearing.

Dated: March 23, 2020

KEKER, VAN NEST & PETERS LLP

By:   */s/  R. James Slaughter*
RACHAEL MENY
R. JAMES SLAUGHTER
EUGENE M. PAIGE

Attorneys for Defendant
LYFT, INC.

---

[1] Lyft is concurrently filing an administrative motion to expedite the briefing on this motion.

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

    A.    Rogers filed this action in state court, but never served process on Lyft. ..............2

    B.    Rogers agreed to arbitrate his claim against Lyft on an individual basis. ..............2

        1.    Lyft requires all drivers using Lyft to agree to its Terms of Service.........2

        2.    Since registering, Rogers has repeatedly agreed to the Terms. ..................3

        3.    The Terms require individual arbitration of Rogers's claim and delegate any dispute about arbitrability to the arbitrator. ...........................5

III.    ARGUMENT.........................................................................................................5

    A.    The FAA requires arbitration agreements to be enforced on their terms. ..............6

    B.    The FAA governs the arbitration provision........................................................7

    C.    Rogers entered into a valid and enforceable arbitration agreement, and any dispute about those gateway issues has been delegated to the arbitrator................8

        1.    Rogers agreed to arbitrate his claim...............................................8

        2.    The Terms clearly and unmistakably delegate any disputes the parties have about "gateway" arbitrability questions to the arbitrator.........................................................................................9

        3.    In any case, the arbitration provision is valid and enforceable.................11

    D.    Rogers's claim falls within the scope of the arbitration provision. ......................12

    E.    Rogers must arbitrate his claim on an individual basis.........................................12

    F.    Rogers's complaint cannot properly seek public injunctive relief........................14

        1.    Rogers seeks a private, not public, injunction. ...........................................14

        2.    The coronavirus pandemic does not change the analysis. ..........................17

        3.    Even if Rogers's request for injunctive relief is inarbitrable, his claim for damages is still private, it must be compelled to arbitration, and this entire action should be stayed pending arbitration of that claim.........................................................................19

    G.    The FAA's transportation worker exemption does not apply here........................19

        1.    The exemption applies only to the interstate transportation of goods. .............................................................................................19

i

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

2. In any case, Rogers never engaged in interstate commerce.......................21

H. The Court should stay this entire action pending the resolution of
arbitration.............................................................................................................22

IV. CONCLUSION............................................................................................................23

1376223.v6

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
  513 U.S. 265 (1995) ............................................................................................7

*Anderson v. Pitney Bowes, Inc.*,
  2005 WL 1048700 (N.D. Cal. May 4, 2005) ..........................................................22

*Athena Feminine Techs. Inc. v. Wilkes*,
  2011 WL 4079927 (N.D. Cal. Sept. 13, 2011) ......................................................12

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) .................................................................................6, 11, 13

*Bekele v. Lyft, Inc.*,
  918 F.3d 181 (1st Cir. 2019) .........................................................................2, 9, 11

*Berkson v. Gogo LLC*,
  97 F. Supp. 3d 359 (E.D.N.Y. 2015) .....................................................................9

*Blair v. Rent-A-Center, Inc.*,
  928 F.3d 819 (9th Cir. 2019) ...............................................................................14

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ........................................................................6, 10

*BrowserCam, Inc. v. Gomez, Inc.*,
  2009 WL 210513 (N.D. Cal. Jan. 27, 2009) .........................................................19

*Brunner v. Lyft, Inc.*,
  2019 WL 6001945 (N.D. Cal. Nov. 14, 2019) ...............................................*passim*

*Camilo v. Lyft, Inc.*,
  384 F. Supp. 3d 435 (S.D.N.Y. 2019) ..................................................................2, 9

*Circuit City Stores, Inc. v. Adams*,
  523 U.S. 105 (2001) ..........................................................................................8, 20

*Citizens Bank v. Alafabco, Inc.*,
  539 U.S. 52 (2003) (per curiam) ...........................................................................7

*Colopy v. Uber Techs. Inc.*,
  2019 WL 6841218 (N.D. Cal. Dec. 16, 2019) .......................................6, 16, 17, 18

*Comedy Club, Inc. v. Improv West Assocs.*,
  553 F.3d 1277 (9th Cir. 2009) ...............................................................................12

iii

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

*Cox v. Ocean View Hotel Corp.*,
    533 F.3d 1114 (9th Cir. 2008) ................................................................................7

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
    748 F.3d 249 (5th Cir. 2014) ................................................................................10

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)................................................................................................6

*DIRECTV, Inc. v. Imburgia*,
    136 S. Ct. 463 (2015)............................................................................................11

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018)..........................................................................1, 6, 11, 13

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)............................................................................................6, 8

*Gadson v. SuperShuttle Int'l*,
    2011 WL 1231311 (D. Md. Mar. 30, 2011)..........................................................20

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000)................................................................................................11

*Grice v. Uber Technologies, Inc.*,
    2020 WL 497487 (C.D. Cal., Jan. 7, 2020) ........................................................22

*Harden v. Roadway Package Sys., Inc.*,
    249 F.3d 1137 (9th Cir. 2001) ............................................................................20

*Heller v. Rasier, LLC*,
    2020 WL 413243 (C.D. Cal. Jan. 7, 2020) ..................................................21, 22

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
    139 S. Ct. 524 (2019)........................................................................................7, 10

*In re Holl*,
    925 F.3d 1076 (9th Cir. 2019) ..............................................................................9

*Kairi v. Supershuttle Int'l*,
    2012 WL 4343220 (N.D. Cal. Sept. 20, 2012) ....................................................12

*Kowalewski v. Samandarov*,
    590 F. Supp. 2d 477 (S.D.N.Y. 2008)..................................................................21

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013) ..............................................................................7

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019)............................................................................................1

iv

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

*Loewen v. Lyft, Inc.*,
129 F. Supp. 3d 945 (N.D. Cal. 2015) ............................................................2, 9, 11

*Magana v. DoorDash, Inc.*,
343 F. Supp. 3d 891 (N.D. Cal. 2018) .......................................................*passim*

*Marmet Health Care Ctr., Inc. v. Brown*,
565 U.S. 530 (2012) ..........................................................................................6

*Mohamed v. Uber Tech., Inc.*,
848 F.3d 1201 (9th Cir. 2016) .........................................................................10

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011) ...........................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ..............................................................................................8

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ...........................................................................8

*Norton v. Lyft, Inc.*,
2019 WL 4744691 (N.D. Cal. Sept. 13, 2019) .......................................*passim*

*Peterson v. Lyft, Inc.*,
2018 WL 6047085 (N.D. Cal. Nov. 19, 2018) ...............................................2, 9

*Randle v. Metro. Transit Auth.*,
2018 WL 4701567 (S.D. Tex. Oct. 1, 2018).....................................................20

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010)........................................................................................1, 10

*Rittman v. Amazon, Inc.*,
383 F. Supp. 3d 1196 (W.D. Wash. 2019).......................................................21

*Sandler v. iStockphoto LP*,
2016 WL 871626 (C.D. Cal. Feb. 5, 2016) ........................................................8

*Scaccia v. Uber Techs., Inc.*,
2019 WL 2476811 (S.D. Ohio Jun. 13, 2019) ...........................................20, 21

*Shams v. CVS Health Corp.*,
2019 WL 1959576 (C.D. Cal. May 2, 2019) ...................................................10

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987)..........................................................................................11

*Singh v. Uber Techs., Inc.*,
939 F.3d 210 (3d Cir. 2019)........................................................................21, 22

v

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

*Summit Health, Ltd. v. Pinhas*,
  500 U.S. 322 (1991) ......................................................................................7

*United States v. Sutcliffe*,
  505 F.3d 944 (9th Cir. 2007) .........................................................................7

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960) .....................................................................................12

*Vargas v. Delivery Outsourcing, LLC*,
  2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ...............................................21

*Waithaka v. Amazon, Inc.*,
  404 F.Supp.3d 335 (D. Mass. 2019) .............................................................21

*Wickberg v. Lyft, Inc.*,
  356 F. Supp. 3d 179 (D. Mass. 2018) .........................................................2, 9

**State Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) ...................................................................................12

*Broughton v. Cigna Healthplans of Cal.*,
  21 Cal. 4th 1066 (1999) ..........................................................................passim

*Clifford v. Quest Software Inc.*,
  38 Cal. App. 5th 745 (2019) ................................................6, 16, 17, 18

*Cruz v. Pacificare Health Sys., Inc.*,
  30 Cal. 4th 303 (2003) ......................................................14, 15, 16

*Lagatree v. Luce, Forward, Hamilton & Scripps*,
  74 Cal. App. 4th 1105 (1999) ...................................................8, 20

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Development (US), LLC*,
  55 Cal. 4th 223 (2012) .................................................................8

**Federal Statutes**

9 U.S.C. § 17

9 U.S.C. § 2.....................................................................................7, 11

9 U.S.C. § 3................................................................................22

9 U.S.C. § 4.................................................................................9

**State Statutes**

California Labor Code § 246 ........................................................................................2, 23

**Other Authorities**

*Chute v. Lyft, Inc.*
    (S.F. Super. Ct. Mar. 29, 2019).........................................................................2, 9, 10

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3      Plaintiff John Rogers is an individual who has used Lyft's platform to connect with and

4  provide rides to passengers.  Like the vast majority of people who use Lyft's platform, Rogers

5  agreed to resolve any disputes with Lyft in arbitration on an individual basis.  In breach of that

6  arbitration agreement, Rogers now brings a putative class action against Lyft, claiming the current

7  coronavirus public health emergency requires Lyft to reclassify all drivers who use its platform in

8  California as employees so that they may begin to accrue sick leave benefits under California law.

9      Like companies in every industry, Lyft recognizes that the coronavirus poses an

10  unprecedented crisis for the health of communities around the United States and globally.  Along

11  with other companies, Lyft is responding to the challenge to help protect the safety and wellbeing

12  of those who use the Lyft platform to earn income or to find on-demand rides.  Lyft announced on

13  March 7 that it will provide funds to drivers who are diagnosed with coronavirus or put under

14  individual quarantine by a public health agency.[2]  The safety of drivers and riders who use Lyft

15  has been and remains Lyft's top priority, especially during this ongoing public health crisis.

16      But, despite the seriousness of coronavirus, the rule of law still applies, and this lawsuit

17  cannot proceed in this Court.  Rogers has agreed to individually arbitrate any disputes or claims

18  related to his use of the Lyft's platform, including claims regarding driver classification.  Because

19  the parties' arbitration agreement delegates questions of arbitrability to the arbitrator, the Court's

20  only role here is to confirm that Rogers and Lyft entered into an arbitration agreement and then to

21  compel individual arbitration and stay this case.  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63,

22  68–70 (2010).  As the United States Supreme Court has recently reiterated, under the Federal

23  Arbitration Act ("FAA"), courts must enforce arbitration agreements according to their terms.

24  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415–19 (2019); *Epic Sys. Corp. v. Lewis*, 138 S. Ct.

25  1612, 1619 (2018).  In any case, the parties' arbitration agreement is valid and enforceable and

26  precludes Rogers from bringing his claim in court, or on a representative basis.  Courts, including

27

28

[2] https://www.lyft.com/safety/coronavirus

1376223.v6

this Court, have repeatedly enforced Lyft's arbitration provision, and sent matters to individual arbitration. *See, e.g.*, *Bekele v. Lyft, Inc.*, 918 F.3d 181 (1st Cir. 2019); *Brunner v. Lyft, Inc.*, No. 19-CV-04808, 2019 WL 6001945, at *1 (N.D. Cal. Nov. 14, 2019) (Chhabria, J.); *Norton v. Lyft, Inc.*, No. 19-CV-02025, 2019 WL 4744691, at *1 (N.D. Cal. Sept. 13, 2019) (Chhabria, J.); *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019); *Peterson v. Lyft, Inc.*, No. 16-CV-07343, 2018 WL 6047085, at *6 (N.D. Cal. Nov. 19, 2018) (Beeler, M.J.); *Wickberg v. Lyft, Inc.*, 356 F. Supp. 3d 179, 182-84 (D. Mass. 2018); *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 966-67 (N.D. Cal. 2015) (Laporte, M.J.); *Chute v. Lyft, Inc.* (S.F. Super. Ct. Mar. 29, 2019).[3]

For these reasons, as discussed further below, the Court should grant Lyft's motion to compel Rogers to individual arbitration and stay this action pending resolution of that arbitration.

## II.     BACKGROUND

### A.     Rogers filed this action in state court, but never served process on Lyft.

Rogers filed this putative class action against Lyft in San Francisco Superior Court on March 12, 2020.  Dkt. No. 1-3 ("Compl.").  Rogers did not serve (and has not served) Lyft with the summons and complaint.  Declaration of R. James Slaughter ("Slaughter Decl.") ¶ 2.[4]  Rogers seeks to bring this case on behalf of "all drivers who work for Lyft in California."  Compl. ¶ 12. He alleges only one claim, that Lyft has violated California Labor Code § 246, *id*. ¶ 33, and seeks damages, declaratory relief stating that Lyft misclassifies him and other California drivers, and a mandatory injunction that reclassifies all drivers using Lyft's platform in California as employees, including "enact[ment of] a policy to provide paid sick leave," *id.*, Prayer (a).  Lyft removed this case pursuant to the Class Action Fairness Act on March 19, 2020.  Dkt. No. 1.

### B.     Rogers agreed to arbitrate his claim against Lyft on an individual basis.

#### 1.     Lyft requires all drivers using Lyft to agree to its Terms of Service.

Lyft operates a mobile-based ridesharing platform that enables people who seek rides to certain destinations to be matched with people willing to drive to those destinations.  Declaration

---

[3] A copy of the *Chute* decision is attached to the Declaration of R. James Slaughter as Exhibit A.
[4] Given Rogers's failure to serve Lyft, Lyft reserves its rights to move to dismiss this action for lack of personal jurisdiction, insufficient process, and insufficient service of process.

2
DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

of Neil Shah ("Shah Decl.") ¶ 3.  Lyft is available in all fifty states and the District of Columbia.  *Id*.  The only way for drivers to offer rides on Lyft's platform is to complete a registration process and download Lyft's smartphone app.  *Id*. ¶ 4.  According to Rogers, his claim arises from using Lyft to drive in California since November 2014.  Compl. ¶¶ 1, 7.  Lyft's business records demonstrate that Rogers has never once driven across state lines in providing a ride using Lyft's platform during that time.  Declaration of Jeannie Lieu ("Lieu Decl.") ¶¶ 2-6.

Use of Lyft is governed by the Terms of Service ("Terms"), which is a contract between Lyft and the driver.  *Id.* ¶ 8, Ex. A.  Agreeing to the Terms is, and always has been, a condition of using Lyft's platform.  *See id* at 1-2.  Drivers consent to the Terms electronically through Lyft's smartphone app.  *See id.* ¶¶ 7-9.  Lyft periodically updates the Terms.  *Id*. ¶ 6.  Those updates are communicated to drivers, like Rogers, who were required to re-consent in order to continue using and offering rides through Lyft's smartphone app.  *Id*.

### 2. Since registering, Rogers has repeatedly agreed to the Terms.

Rogers first applied to use Lyft on November 13, 2014 and provided rides using Lyft from that date onwards.  *See id.* ¶ 13; Compl. ¶¶ 7, 23.  According to Lyft's business records, Rogers accepted Lyft's Terms on four separate occasions: when he signed up on November 13, 2014; when he re-consented to the Terms on October 4, 2016 and April 12, 2018; and most recently, and when he re-consented to the Terms on October 29, 2019.  Shah Decl. ¶ 13.

For purposes of this motion, however, the Court need consider only the most recent version of the Terms to which Rogers consented, which date from August 26, 2019.  *Id.*  Rogers agreed to those Terms on October 29, 2019.  *Id.*  Those terms "set[] forth the entire understanding and agreement between [the driver] and Lyft . . . and supersede[d] all previous understandings and agreements between the parties, whether oral or written." *Id.*, Ex. A, §21.

Lyft released the August 26, 2019 Terms to drivers like Rogers, *i.e.*, drivers who had previously been approved to use Lyft's app, on a rolling basis.  *Id.* ¶¶ 7-9.  Drivers to whom these Terms had been rolled out saw the updated terms automatically appear on the screen, allowing them to scroll through the entire text of the terms, when they opened the Lyft App.  *Id.* ¶ 8-9.  The screen immediately displayed to drivers notified them in all capital letters that the Terms contain

provisions that govern how claims can be brought and that the Terms require drivers to submit claims to arbitration.  *Id.* ¶ 7 & Ex. A.  The screen also contained a hyperlink in a different color than the surrounding text that automatically directed drivers to the section in the Terms containing the arbitration provision.  *Id.* ¶ 7.  The following screenshot depicts what Rogers would have seen on his screen when prompted to re-consent to the August 26, 2019 Terms:



*Id.* ¶ 7.

   If drivers did not consent to the updated Terms, they could not be matched with new rides. *Id.* ¶ 9.  Once presented with the Terms, drivers were required to click "I accept" to proceed to offer rides using Lyft's smartphone app.  *Id.*  Rogers, and other drivers like him, could not offer a ride after being presented with the August 26, 2019 Terms if the driver clicked the "X" button at the top left-hand corner of the screen rather than the "I Agree" button.  *Id.*  Until the driver clicked the "I Agree" button, the screen shown above continued to appear each time the driver opened the Lyft App.  *Id.*  As noted above, Lyft's electronically generated records show that, on October 29, 2019, Rogers agreed to be bound by the August 26, 2019 Terms.  *Id.* ¶¶ 10-13.

4

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

### 3. The Terms require individual arbitration of Rogers's claim and delegate any dispute about arbitrability to the arbitrator.

Lyft's August 26, 2019 Terms require individual arbitration of "ALL DISPUTES AND CLAIMS BETWEEN US," including "any dispute, claim or controversy, whether based on past, present, or future events, arising out of or relating to: this Agreement and prior versions thereof . . . , the Lyft Platform, the Rideshare Services . . . your relationship with Lyft, . . . any payments made or allegedly owed to you . . . any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement . . . ." *Id.*, Ex. A § 17(a).[5]  The Terms also provide that claims may be brought "ONLY IN AN INDIVIDUAL CAPACITY" and the "arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claims." *Id.* § 17(b).  The arbitration provision provides drivers with the ability to opt out of arbitration within 30 days of consenting to the Terms. *Id.*, Ex. A § 17(j).  Rogers did not opt out of the arbitration provision in these Terms. *Id.* ¶ 13.

Further, the Terms provide that "[a]ll disputes concerning the arbitrability of a Claim (including disputes about the scope, applicability, enforceability, revocability, or validity of the Arbitration Agreement) shall be decided by the arbitrator." *Id.* § 17(a).

## III.   ARGUMENT

The Court should compel individual arbitration and stay this action because the arbitration provision and class action waiver in Lyft's Terms are valid and enforceable, Rogers agreed to that provision, and this dispute falls within the scope of that agreement.  Indeed, this Court has twice enforced the arbitration provision in Lyft's Terms in the past year. *Brunner*, 2019 WL 6001945, at *1 (Chhabria, J.); *Norton*, 2019 WL 4744691, at *1 (Chhabria, J.).  Rogers attempts to avoid arbitration by asserting that (1) he seeks an inarbitrable "public" injunction and (2) the FAA

---

[5] Other provisions in the Terms specify that arbitrations will proceed under the American Arbitration Association's ("AAA") Consumer Arbitration Rules, although drivers may ask the arbitrator to use a different set of AAA rules.  Shah Decl., Ex. A § 17(d).  Drivers are entitled to reasonable discovery and may seek "any individualized remedies that would be available in court." *Id.* § 17(d).  In addition, the arbitrator may award drivers reasonable fees and costs under applicable law, while Lyft relinquishes any right to such fees and costs. *Id.* § 17(e)(5)-(6).

5

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

cannot be enforced against him because he is exempt under its transportation worker exemption. These arguments are improper and incorrect. *First,* Rogers's argument that an injunction seeking to reclassify workers as employees qualifies as an inarbitrable public injunction has been squarely rejected by two recent decisions from this District and a recent decision from the California Court of Appeals construing California Supreme Court law. *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 900-01 (N.D. Cal. 2018) (Hamilton, J.); *Colopy v. Uber Techs. Inc.*, No. 19-CV-06462, 2019 WL 6841218, at \*2 (N.D. Cal. Dec. 16, 2019) (Chen, J.); *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 753 (2019). *Second,* Rogers's argument that he is exempt from the FAA has been rejected by the United States Supreme Court, nine federal appellate courts, and virtually every other court to have decided the issue. In any case, and more importantly, these disputes about arbitrability have been clearly and unmistakably delegated to an arbitrator, not the Court.

**A.      The FAA requires arbitration agreements to be enforced on their terms.**

Congress enacted the FAA to reverse the "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also* 9 U.S.C. § 1, *et seq.* Under the FAA, courts must enforce arbitration agreements as written because the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012); *see also Concepcion*, 563 U.S. at 339 (confirming the "liberal federal policy favoring arbitration"). Indeed, the Supreme Court recently reaffirmed that the FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.'" *Epic Sys.*, 138 S. Ct. at 1621. "[T]he Act leaves no place for the exercise of discretion . . . but instead mandates that . . . courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

Judicial review of an arbitration agreement is thus generally limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and . . . (2) whether the agreement encompasses the dispute at issue." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). When the answer to both questions is yes, courts enforce the agreement in accordance with its

6

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

terms.  *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).  Where, as here, the parties have "clearly and unmistakably" delegated questions of arbitrability to the arbitrator, a court's role is limited to determining the effectiveness of the delegation clause.  *See id.* at 1132; *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.").  If a delegation clause in an arbitration agreement is found unenforceable for some reason, courts proceed to answer the two "gateway" questions above.  In answering those questions, a written contractual provision to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

### B.     The FAA governs the arbitration provision.

The FAA applies to "contracts involving interstate commerce" and represents the "broadest permissible exercise of Congress' Commerce Clause power."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013); *see* 9 U.S.C. §§ 1, 2; *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam).  An activity need not be "within the flow of interstate commerce" or even have "a substantial effect on interstate commerce" to fall within the FAA.  *Citizens Bank*, 539 U.S. at 56.  Rather, the contracted activity need only *affect* interstate commerce.  *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995).

Here, not only does the arbitration provision state that it is "governed by the Federal Arbitration Act," Shah Decl., Ex. A §17(a), but the contracted activity readily meets the standard of "affecting" interstate commerce.  First, Lyft's platform is available across multiple cities and states, and drivers who have completed the registration process can use Lyft's platform in every city in which he or she is approved to drive using Lyft.  *Id.* ¶ 3.  The "multistate nature" of Lyft's platform demonstrates that the Terms affect interstate commerce.  *See Allied-Bruce Terminix*, 513 U.S. at 282; *see also Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 329-30 (1991).  Second, Lyft's platform facilitates connections between drivers and riders through the internet.  Shah ¶ 2.  The internet undoubtedly "is an instrumentality and channel of interstate commerce."  *United States v.*

7

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

*Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007).  For both of these reasons, the FAA unquestionably

governs the arbitration agreement entered into between Rogers and Lyft.[6]

### C. Rogers entered into a valid and enforceable arbitration agreement, and any dispute about those gateway issues has been delegated to the arbitrator.

#### 1. Rogers agreed to arbitrate his claim.

The Court must first determine whether a valid arbitration agreement exists by "apply[ing]

ordinary state-law principles that govern the formation of contracts," *First Options of Chicago,*

*Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and giving "due regard to the federal policy favoring

arbitration," *Pinnacle Museum Tower Ass'n v. Pinnacle Market Development (US), LLC*, 55 Cal.

4th 223, 236 (2012).  Given the strong federal policy in favor of arbitration, "any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H.*

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Here, California law

applies, Shah Decl., Ex. A § 21, and it establishes that the parties' agreement is valid.

Although the advent of internet commerce has put new issues of contract formation before

courts, "it has not fundamentally changed the principles of contract, . . . [one of which] is the

requirement [of] '[m]utual manifestation of assent, whether by written or spoken word or by

conduct.'"  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *Specht*

*v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002)).  Here, Rogers manifested his

assent to Lyft's Terms and the arbitration provision therein.

Rogers agreed to the Terms after being presented with the Terms and given the

opportunity to scroll through them before clicking a large purple button that said, "I Accept."

Shah Decl. ¶¶ 7-9, 13.  This method is commonly known as a "scrollwrap," and has repeatedly

been found to create enforceable agreements.  *See Sandler v. iStockphoto LP*, No. 2:15-CV-

---

[6] None of this is to say that drivers who use Lyft's platform fall under the FAA's exemption for interstate transportation workers.  As discussed below, that exemption applies only to workers transporting **goods**, because the language "engaged in interstate commerce" in the exemption is interpreted more narrowly.  *Circuit City Stores, Inc. v. Adams*, 523 U.S. 105, 106, 112, 119 (2001); *see also Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1120 (1999) (noting that nine federal appellate courts construe the exemption "narrowly, finding that it applies only to employees actually engaged in the transportation of goods in commerce").

1376223.v6

03659, 2016 WL 871626, at *2 (C.D. Cal. Feb. 5, 2016) (holding that plaintiffs assented to forum selection clause because they had to affirmatively click "I agree" next to a scrollable copy of the contract terms in order to complete registration process for use of the website at issue); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 386, 398-99 (E.D.N.Y. 2015) (noting that courts routinely enforce scrollwrap agreements because they (a) provide a "realistic opportunity" to review the terms of the agreement and (b) require a physical manifestation of assent) (collecting cases).[7]

In fact, numerous courts, including this Court, have enforced the arbitration provision in the Terms after finding that the named plaintiff(s) had consented using this "scrollwrap" method. *See, e.g.*, *Bekele*, 918 F.3d at 184-90; *Brunner*, 2019 WL 6001945, at *1 (Chhabria, J.); *Norton*, 2019 WL 4744691, at *1 (Chhabria, J.); *Camilo*, 384 F. Supp. 3d at 439; *Peterson*, 2018 WL 6047085, at *6 (Beeler, M.J.); *Chute*, No. CGC-18-571063 (S.F. Super. Ct. Mar. 29, 2019); *Wickberg*, 356 F. Supp. 3d at 182-84; *Loewen*, 129 F. Supp. 3d at 957 (Laporte, M.J.) (holding that the plaintiffs had assented to arbitration with Lyft because "the terms of the TOS were displayed on the screen, [the] [p]laintiffs had the opportunity to scroll through the terms prior to assent, and the delegation provision is expressly contained in the 2014 TOS under a bolded, large font heading relating to arbitration").  Accordingly, by assenting to the August 26, 2019 Terms via a "scrollwrap" presentation, Rogers agreed to arbitrate his claim against Lyft in this case.[8]

### 2. The Terms clearly and unmistakably delegate any disputes the parties have about "gateway" arbitrability questions to the arbitrator.

The FAA requires courts to compel arbitration "in accordance with the terms of the [parties'] agreement."  9 U.S.C. § 4.  The Supreme Court has recognized that parties may contract

---

[7] In *Berkson*, the court applied California law in addition to New York and Illinois law, which the court found to be indistinguishable for purposes of its analysis.  97 F. Supp. 3d at 388.

[8] Indeed, the Ninth Circuit has found enforceable arbitration provisions that are presented via significantly less conspicuous "clickwrap" procedures.  *See, e.g.*, *In re Holl*, 925 F.3d 1076, 1080-82 (9th Cir. 2019).  There, the plaintiff agreed to a website's terms of service by checking a box next to a statement containing a hyperlink to the terms.  *Id.*  The court held that the plaintiff consented to arbitration, even though "locating the arbitration clause . . . require[d] several steps and a fair amount of web-browsing intuition" to figure out that the hyperlinked terms incorporated by reference a different set of non-hyperlinked terms that included the arbitration provision.  *Id.* at 1083.  The "scrollwrap" presentation at issue in this case provides vastly more conspicuous notice of and easier access to the arbitration provision than in *In re Holl*.

9

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

to delegate to an arbitrator "gateway" questions about the existence of an arbitration agreement and the scope of that agreement. Such a delegation clause is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Delegation clauses are enforceable when there is "clear and unmistakable evidence" that the parties agreed to delegate questions of arbitrability to the arbitrator. *Henry Schein*, 139 S. Ct. at 530; *see also Brennan*, 796 F.3d at 1130–32; *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262–63 (5th Cir. 2014) (where the parties have delegated questions of arbitrability to the arbitrator, "whether the Plaintiffs' claims are subject to arbitration must be decided in the first instance by the arbitrator, not a court").

Here, the parties delegated the gateway issue of arbitrability to the arbitrator by including the following language in the Terms: "All disputes concerning the arbitrability of a Claim (including disputes about the scope, applicability, enforceability, revocability or validity of the Arbitration Agreement) shall be decided by the arbitrator, except as expressly provided below." Shah Decl., Ex. A § 17(a). This is "clear and unmistakable" evidence that the parties agreed to delegate gateway questions of arbitrability. Numerous courts have found that similar language demonstrates an agreement to delegate. *See, e.g.*, *Mohamed v. Uber Tech., Inc.*, 848 F.3d 1201, 1207-09 (9th Cir. 2016) (enforcing delegation clause in agreement which provided that disputes "arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision" will be resolved by an arbitrator); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (finding clear and unmistakable evidence of agreement to delegate where contract gave arbitrators the authority to determine "the validity or application of any of the provisions" of the arbitration clause); *Shams v. CVS Health Corp.*, No. CV 18-8158, 2019 WL 1959576, at *6 (C.D. Cal. May 2, 2019) (finding that the parties agreed to delegate questions of arbitrability where covered claims included "disputes arising out of or relating to the validity, enforceability or breach of this Policy"). Indeed, courts agree that the delegation clause in the Terms is enforceable, including this Court. *E.g.*, *Norton*, 2019 WL 4744691, at *1; *Brunner*, 2019 WL 6001945, at *1; *Chute*, No. CGC-18-571063 (S.F.

10

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

Super. Ct. Mar. 29, 2019) (holding that the question of whether the injunction sought by the plaintiff was "public" was delegated to the arbitrator and, on that basis, compelling arbitration).

The delegation clause in the Terms is clear and unmistakable evidence that the parties agreed to delegate arbitrability questions to the arbitrator. The Court should compel any dispute about arbitrability to arbitration and stay the action pending the resolution of those questions. To the extent that the Court disagrees, the arbitration agreement in the terms is valid and enforceable.

### 3.     In any case, the arbitration provision is valid and enforceable.

Arbitration agreements are presumed valid and enforceable. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987). This presumption reflects congressional intent to enact a "liberal federal policy favoring arbitration agreements." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). This also reflects the "fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 339. Thus, arbitration clauses must be enforced unless grounds exist "at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Likewise, the Supreme Court has held that waivers of the right to seek relief on behalf of others, like the one present in Lyft's Terms, are enforceable under the FAA. *See Epic Systems*, 138 S. Ct. at 1632; *Concepcion*, 563 U.S. at 344-50; *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468-71 (2015). In *Concepcion*, the Supreme Court held that the FAA preempted California's state law rule prohibiting representative-action waivers in arbitration agreements, 563 U.S. at 346-48, and the Court recently held in *Epic Systems* that the use of representative-action waivers in arbitration agreements does not violate the National Labor Relations Act, 138 S. Ct. at 1632.

If Rogers contends that the Terms and the arbitration provision therein are invalid and unenforceable, it would be his burden—not Lyft's—to prove that his claim is non-arbitrable. *See Green Tree*, 531 U.S. at 91-92. Courts considering challenges to Lyft's Terms, however, have repeatedly rejected such arguments. *See Bekele*, 199 F. Supp. 3d at 298-303 (finding that the 2014 version of the Terms was not unconscionable under Massachusetts law); *Loewen*, 129 F. Supp. 3d at 965 (finding "low degree of both procedural and substantive unconscionability present in the 2014 TOS" under California law). Because it is not Lyft's burden to prove the

Terms are enforceable, Lyft will address any arguments that they are not, if necessary, on reply.[9]

**D.    Rogers's claim falls within the scope of the arbitration provision.**

To the extent the Court finds the parties' delegation provision unenforceable, the second inquiry for the Court—whether the agreement encompasses Rogers's claim—is straightforward. Rogers's claim falls squarely within the scope of the arbitration provision.  As set forth above, the arbitration provision provides that "ALL DISPUTES AND CLAIMS BETWEEN US . . . SHALL BE EXCLUSIVELY RESOLVED BY BINDING ARBITRATION SOLELY BETWEEN YOU AND LYFT."  Shah Decl., Ex. A § 17(a).  On its face, this phrasing covers *any* claims Rogers might bring, not just the one he has brought.[10]  More importantly, the arbitration provision expressly covers the claim Rogers has brought, including "any payments made or allegedly owed . . . [any] state or federal wage-hour law," as well as "all other federal and state statutory and common law claims."  *Id.*, Ex. A § 17(a).  The arbitration provision covers Rogers's claim.[11]

**E.    Rogers must arbitrate his claim on an individual basis.**

Because Rogers entered into a valid arbitration agreement with Lyft that encompasses his Labor Code claim, the Court must also enforce the arbitration agreement according to its terms by upholding the Terms' prohibition against class or representative actions and non-individualized

---

[9] If Rogers were to argue that the Terms are unenforceable because they are unconscionable, such an argument would lack merit.  Invalidating an arbitration agreement under California law requires a two-part showing: the party opposing arbitration has the burden of proving that the arbitration provision is both procedurally and substantively unconscionable.  *Kairi v. Supershuttle Int'l*, No. 08-cv-02993, 2012 WL 4343220, at *7 (N.D. Cal. Sept. 20, 2012) (citing *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 795 (2012)).  Rogers will not be able to satisfy these requirements.  To take one example, California law requires only a "modicum of bilaterality" to overcome a claim of substantive unconscionability.  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 117 (2000).  Here, the arbitration agreement does not contain any one-sided terms that disadvantage Rogers.  On the contrary, the arbitration agreement provides that Lyft will pay all filing and arbitration fees over $50 for claims brought for $5,000 or less, and will forgo any right to collect fees and costs following arbitration.  Shah Decl., Ex. A § 17(e).

[10] *See, e.g.*, *Athena Feminine Techs. Inc. v. Wilkes*, No. C 10-04868 SBA, 2011 WL 4079927, at *11 (N.D. Cal. Sept. 13, 2011) (similarly worded arbitration clause "requir[ed] the parties to submit all disputes between them to an arbitrator").

[11] Even if the arbitration agreement were ambiguous—and it is not—Rogers's claim still should be sent to arbitration.  Under the FAA, ambiguous arbitration agreements should be interpreted as granting arbitration.  *See Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1286 (9th Cir. 2009).  Here, at the very least, one cannot say "with positive assurance" that Rogers's claims are not arbitrable, and thus all "[d]oubts should be resolved in favor of coverage."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

1376223.v6

relief and ordering arbitration of Rogers's request for an injunction on an individualized basis.

When he agreed to the Terms, Rogers waived his right to participate in class or representative proceedings.  The Terms specifically provide that "YOU AND LYFT MAY EACH BRING CLAIMS IN ARBITRATION AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY AND NOT ON A CLASS, COLLECTIVE ACTION, OR REPRESENTATIVE BASIS ('CLASS ACTION WAIVER').  YOU UNDERSTAND AND AGREE THAT YOU AND LYFT BOTH ARE WAIVING THE RIGHT TO PURSUE OR HAVE A DISPUTE RESOLVED AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, COLLECTIVE OR REPRESENTATIVE PROCEEDING."  Shah Decl., Ex. A § 17(b).  The Terms further provide: "The arbitrator shall have no authority to consider or resolve any Claims or issue any relief on any basis other than an individual basis . . . The arbitrator may award declaratory or injunctive relief only in favor the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claims."  *Id*.  As Lyft explains above, this contract is presumed valid and enforceable under ordinary California contract law principles.  Accordingly, this contract provision should be upheld, because any contrary result would fundamentally alter the nature of the arbitration to which Rogers and Lyft agreed.

Indeed, the Supreme Court's *Epic Systems* decision prohibits courts from compelling arbitration on terms different from those in the parties' agreement.  The Supreme Court held that the FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify ***with whom*** the parties choose to arbitrate their disputes and ***the rules*** under which that arbitration will be conducted.'"  *Epic Sys.*, 138 S. Ct. at 1621.  The FAA preempts ***any*** state rule "seeking to declare individualized arbitration proceedings off limits."  *Id*. at 1623.  *Epic Systems* thus reaffirms *Concepcion*'s abrogation of California's public policy of invalidating class-arbitration waivers because it "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."  563 U.S. at 344.  *Epic Systems* and *Concepcion* make clear that California courts must enforce the FAA by compelling parties to arbitrate according to the terms of their agreement.  *See Epic Sys.*, 138 S. Ct. at 1621.  Here, the Terms mandate that Rogers pursue only an individual request for the relief that he seeks.

13

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

**F.     Rogers's complaint cannot properly seek public injunctive relief.**

To attempt to evade his obligation to arbitrate on an individual, non-representative basis, Rogers asserts in his complaint that he seeks a purportedly "public" injunction.  Compl. ¶ 1.  If Rogers's characterization of the requested injunction were accurate, his claim would arguably be non-arbitrable under California law.  As an initial matter, the parties delegated precisely this kind of dispute over whether a claim is arbitrable to the arbitrator.[12]  But even if the Court were to reach this question, Rogers's characterization of his requested injunction is not accurate.  The remedy that Rogers seeks here epitomizes a ***private*** injunction, and this action is thus subject to individual arbitration, as Lyft's arbitration agreement is valid and encompasses this dispute.

**1.     Rogers seeks a private, not public, injunction.**

Even if a public injunction was theoretically available, the relief Rogers seeks is squarely a private, not public injunction.  California law draws an easily discernible bright-line distinction between ordinary "private" injunctive relief and the special "public" injunctive relief available under California's Unfair Competition Law ("UCL"), Consumer Legal Remedies Act, and False Advertising Law.  *See generally McGill*, 2 Cal. 5th at 954–61.  Under the so-called "*Broughton-Cruz* rule," claims seeking private injunctive relief are arbitrable, while claims seeking public injunctive relief are presumed to be non-arbitrable absent a showing of contrary legislative intent. *See Broughton v. Cigna Healthplans of Cal*., 21 Cal. 4th 1066, 1082 (1999); *Cruz v. Pacificare Health Sys., Inc*., 30 Cal. 4th 303, 316 (2003) (finding no such contrary intent as to the UCL).

Under California law, "[p]rivate injunctions resolve a private dispute between the parties and rectify individual wrongs, ***though they may benefit the general public incidentally***."  *Blair v. Rent-A-Center, Inc.,* 928 F.3d 819, 824 (9th Cir. 2019) (emphasis added).  "By contrast, public injunctions benefit the public directly by the elimination of deceptive practices."  *Id.*  In light of this standard, "public" injunctive relief invariably consists of a very limited set of orders in which the order's primary purpose and effect is to clearly and primarily benefits all members of the public, instead of primarily redressing alleged injury or harm to individuals.  The quintessential

[12] This is precisely what San Francisco Superior Court Judge Mary Wiss found in granting Lyft's motion to compel arbitration of a complaint seeking a public injunction.  Slaughter Decl., Ex. A.

1376223.v6

type of such public injunctive relief is an order barring a defendant from continuing to make misrepresentations to "the general public" through deceptive advertising and marketing.  Such orders are "public" in nature because ***every member of the public*** could personally hear these misrepresentations, and prohibiting such misrepresentations therefore ***directly*** benefits the public at large.  In such cases, "[w]hatever the individual motive of the party requesting injunctive relief, the benefits of granting injunctive relief by and large do not accrue to that party, but to the general public in danger of being victimized by the same deceptive practices as the plaintiff suffered." *Broughton*, 21 Cal. 4th at 1079–80.  The plaintiffs therefore benefit from injunctive relief, "if at all, only by virtue of being a member of the public," because "they have already been injured, allegedly, by [the deceptive] practices and are aware of them." *Id.* at 1080 n.5.  Thus, "an injunction . . . against deceptive advertising practices is clearly for the benefit of the general public; it is designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff." *McGill*, 2 Cal. 5th at 955.  For example, injunctive relief was found to be "public" in nature where plaintiffs sought to enjoin (1) a bank's deceptive advertising about its "credit protector" plan for credit-card holders;[13] and (2) a healthcare company's deceptive advertising about the quality of medical services provided under its healthcare plans.[14]  Those cases involved injunctions against making deceptive statements ***directly*** to "the general public."

By contrast, California law is clear that "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does ***not*** constitute public injunctive relief."  *Id.*  Accordingly, injunctive relief that bars allegedly wrongful practices between contracting parties is necessarily "private" because such relief does ***not*** seek to redress or prevent injury to "the general public" but only to that subset of the general public that is in a particular type of contractual relationship with the defendant.  On the contrary, courts have held that private injunctive relief is sought where "the plaintiff is the primary beneficiary of . . . an award and the public [is] only indirectly benefited[.]"

---

[13] *McGill*, 2 Cal. 5th at 952–53, 956–58.

[14] *Broughton*, 21 Cal. 4th at 1072; *Cruz*, 30 Cal. 4th at 308, 315–16.

1376223.v6

*Broughton*, 21 Cal. 4th at 1080 n. 5.

Recently, in *Clifford v. Quest Software Inc.,* the California Court of Appeal addressed a nearly identical reclassification request and determined that it was one for private, not public, relief.  There, an employee alleged that his employer had misclassified him as an exempt employee and therefore had failed to provide overtime pay and meal and rest breaks, had failed to reimburse him for business expenses, and had engaged in unfair business practices under § 17200, among other things.  38 Cal. App. 5th at 745, 753.  The employee sought a preliminary injunction against the defendant "to prevent it from committing further violations of the Labor Code and the unfair business practices" alleged in the complaint.  *Id.* at 753.  In determining whether the employee was required to arbitrate this request, the court emphasized that "[p]ublic injunctive relief under the UCL . . . is relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public."  *Id.* at 751 (citing *McGill*).

Applying this framework, the *Clifford* court held that the employee's requested injunction was private because "[t]he only express beneficiary of [the] requested injunctive relief is [the employee], and the only potential beneficiaries are [defendant's] current employees, not the public at large."  *Id.* at 753.  The court emphasized that the employee's claim under § 17200 was private in nature because "it seeks to resolve a private dispute between him and his employer over his employer's act of allegedly misclassifying him as an exempt employee resulting in several Labor Code violations."  *Id.*  Thus, the dispute was "inherently distinguishable from the misleading advertising practices at issue in *Broughton* and *Cruz* because those practices directly impacted the public at large and the public stood to benefit from injunctive relief."  *Id.* at 753-54.

Both courts in this District to have considered this issue—in cases that are also nearly identical to this one, and not incidentally brought by Rogers's counsel—have held that requests to reclassify independent-contractor drivers as employees sought ***private*** injunctive relief, not public injunctive relief.  *See Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 900-01 (N.D. Cal. 2018) (Hamilton, J.); *Colopy v. Uber Techs. Inc.*, No. 19-CV-06462, 2019 WL 6841218, at *2 (N.D. Cal. Dec. 16, 2019) (Chen, J.).  Chief Judge Hamilton's analysis in *Magana* is instructive here:

1376223.v6

> Here, plaintiff's [complaint] . . . seek[s] injunctive relief only for his California Labor Code claims. . . .  Those claims have the primary purpose and effect of redressing and preventing harm to DoorDash's employees.  Indeed, plaintiff's argument makes clear that the injunctive relief he seeks would be ***entirely opposite*** of what *McGill* requires—any benefit to the public would be derivate of and ancillary to the benefit to DoorDash's employees (in the form of, for example, the company's increased tax payments and employees' possible decreased dependence on assistance from the state government).  Therefore, Magana does not assert a claim for public injunctive relief under state law.

*Id.* at 901 (emphasis added).  Chief Judge Hamilton thus squarely rejected the plaintiff's attempt to evade arbitration by mischaracterizing the requested injunctive relief as "public," even though it could only benefit a subset of the public in a specific type of contractual relationship with the defendant.  Judge Chen found the same.  *See Colopy*, 2019 WL 6841218, at *2 ("[The plaintiff] does not seek a public injunction under *McGill*.  Merely declaring that a claim seeks a public injunction is not sufficient to bring that claim within the bounds of the rule set forth in *McGill*.").

Here, as in those cases, Rogers seeks broad injunctive relief (*i.e.* total "reclassification") under the California Labor Code for "a group of individuals similarly situated" to himself contractually: drivers who use Lyft's platform and work as independent contractors.  *McGill*, 2 Cal. 5th at 955.  Again, as in those cases, the complaint says the requested injunction would help the "general public," Compl. ¶ 5, (allegedly by allowing Lyft drivers who might feel ill (for any reason) to stay home and thus not make others sick), but the relief that Rogers seeks would only ***directly*** benefit the drivers using Lyft's platform who would be reclassified as employees.  Accordingly, Rogers's requested injunction is private in nature and therefore arbitrable.

### 2.  The coronavirus pandemic does not change the analysis.

As described above, just three months ago, Judge Chen held in *Colopy,* as Judge Hamilton had held before him in *Magana,* that a request for injunctive relief seeking to reclassify workers as employees instead of independent contractors was a request for private, not public, injunctive relief.  *Colopy*, 2019 WL 6841218, at *2; *Magana*, 343 F. Supp. 3d at 900-01.  These decisions are in accord with the California Court of Appeal's recent decision in *Clifford*.  *See* 38 Cal. App. 5th at 753.  The coronavirus does not change that analysis.  The legal issue remains unchanged.

The legal question, which is exactly the same legal question presented to Judge Chen and

1376223.v6

Chief Judge Hamilton in *Colopy* and *Magana*, and the California Court of Appeal in *Clifford*, is whether injunctive relief that would directly benefit *only* the plaintiff and those similarly situated is private relief. Here, as in each of those three recent decisions, the answer is yes. Rogers seeks an injunction that would *directly* impact only drivers who use Lyft by reclassifying them as employees. The fact that the requested injunction could arguably also *incidentally* impact the public health does not alter the analysis.[15] As in *Magana*, any benefit to the general public from the requested injunction "would be derivate of and ancillary to the benefit to [the defendant's] employees." 343 F. Supp. 3d at 901. As a matter of California law, the fact that an injunction may "incidentally vindicate[] important public interests" does not make it a public injunction. *Broughton*, 21 Cal. 4th at 1084. That remains exactly the situation before the Court now. The reclassification injunction Rogers requests could directly benefit only the drivers who use Lyft.

Rogers's real argument—that the nature of the injunctive relief requested should vary based on a utilitarian analysis of the public welfare under the totality of the circumstances—has no basis in the law and is in practice unworkable. None of the decisional law from the California Supreme Court, the California Court of Appeals, or courts in this District, suggest that is the rule. Instead, as explained above, the question is who *directly* benefits from the requested injunction. But even if the Court were inclined to alter California law, or read into existing California law the possibility that the nature of the injunctive relief requested could vary in this way, it should not. Such an interpretation would be completely unworkable. To focus on the current pandemic crisis as an example, there is no way for the Court to determine from one moment to the next whether

---

[15] Indeed, there is no reason to accept Rogers's **bold, unevidenced assertion** that reclassifying drivers who use Lyft as employees would actually benefit the public health. For example, the State of California has deemed the transportation services provided by drivers who use Lyft to be an essential service during this pandemic. Specifically, the State has ordered that drivers who use Lyft (as well as Lyft's actual employees) "are 'Essential Critical Infrastructure Workers' who "help state, local, tribal, and industry partners as they work to protect communities, while ensuring continuity of functions critical to public health and safety, as well as economic and national security." *See* https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf.

Forcing Lyft to reclassify drivers as employees could result in Lyft implementing scheduled shifts, decreasing the number of drivers operating on the platform at any given time, or other operational changes. In other words, Rogers is asking the Court to issue an injunction that would disrupt Lyft's operations during the State's emergency response to the coronavirus pandemic, even though the State has already declared those operations essential.

an injunction reclassifying drivers would actually benefit the public health.  What if the requested injunction turned out to harm the public health, or what if a vaccine is created and the pandemic is limited, would that transform the requested injunction back into one for private relief?  Or when the pandemic ends, would the requested injunction become one for private relief again?  There is no workable principle for Rogers's requested transformation of California law.  Instead, these essential questions of public health should be left to the executive branches of government, which have public health officials to make these decisions and the plenary power to enforce them.

> **3.   Even if Rogers's request for injunctive relief is inarbitrable, his claim for damages is still private, it must be compelled to arbitration, and this entire action should be stayed pending arbitration of that claim.**

Even if the Court were to find that Rogers's request for injunctive relief is not arbitrable (and it is arbitrable, for the reasons stated above), Rogers's complaint contains an indisputably arbitrable request for compensation for the alleged sick leave violation.  That is not a request for an injunction.  And where "a suit contains both arbitrable and inarbitrable claims, the arbitrable claims should be severed . . . and sent to arbitration."  *Broughton*, 21 Cal. 4th at 1088.

If the Court severs Rogers's damages claim, the Court should then exercise its discretion to stay this entire action given the near complete factual overlap between the damages claim and request for injunctive relief on "considerations of economy and efficiency."  *BrowserCam, Inc. v. Gomez, Inc.*, No. 08–CV–02959, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) (citing *United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)).

**G.   The FAA's transportation worker exemption does not apply here.**

In a further attempt to avoid individual arbitration, Rogers preemptively argues in his preliminary injunction motion that Lyft cannot enforce the parties' arbitration agreement because he qualifies for the transportation worker exemption in Section 1 of the FAA.  *See generally* Dkt. No. 8 (citing 9 U.S.C. § 1).   Rogers's argument fails both on the law and on the facts.

**1.   The exemption applies only to the interstate transportation of goods.**

Section 1 of the FAA exempts from its coverage all "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  To qualify for this exemption from the FAA in the Ninth Circuit, an individual must

19

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

(1) be a "transportation worker" who is "engaged in interstate commerce," and (2) work for a business pursuant to an "employment contract."  *Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140–41 (9th Cir. 2001) (citing *Circuit City*, 523 U.S. at 118).  With respect to the first prong, "[t]he plain meaning of the words 'engaged in commerce' is narrower than the more open-ended formulations 'affecting commerce' and 'involving commerce.'"  *Circuit City*, 532 U.S. at 118.  For this reason, "the § 1 exclusion provision [is] afforded a narrow construction."  *Id.*  This construction, which is binding here, reflects "Congress' demonstrated concern with transportation workers and their necessary role in the free flow of ***goods*** . . . ."  *Id.* at 121 (emphasis added).

Applying this narrow construction, the Supreme Court and virtually every other court to consider this issue has held the FAA's transportation worker exemption applies only to workers transporting ***goods***, not passengers.  *Circuit City*, 523 U.S. at 106, 112, 119; *see also Lagatree*, 74 Cal. App. 4th at 1120 n.11 (noting that nine federal appellate courts have held that the exemption "applies only to employees actually engaged in the transportation of goods in commerce").  Using Lyft does not involve the transportation of goods, only passengers.  *See* Shah Decl. ¶ 3.  Rogers does not even allege to the contrary.  Accordingly, this exemption does not apply here.

Indeed, in *Scaccia v. Uber Techs., Inc.*, No. 3:18-cv-00418, 2019 WL 2476811 (S.D. Ohio Jun. 13, 2019), the court held that Uber drivers do not fall within the FAA's exemption for transportation workers.  *Id.* at *4 ("When driving with Uber, Plaintiff transported passengers to and fro, sometimes in interstate commerce, but he did not transport goods in interstate commerce.  Such work places him outside 'any other class of workers engaged in . . . interstate commerce' described in the FAA's § 1 exclusions from mandatory arbitration."), *report & recommendations adopted*, 2019 WL 4674333.  Several other courts likewise have held that the exemption does not apply to drivers who transport passengers.  *See, e.g., Randle v. Metro. Transit Auth.*, No. H-18-1770, 2018 WL 4701567, at *4 (S.D. Tex. Oct. 1, 2018) ("The defining quality of a § 1 'transportation worker' is moving goods through interstate commerce.") (appeal docketed); *Gadson v. SuperShuttle Int'l*, No. 10-cv-01057, 2011 WL 1231311, at *5 (D. Md. Mar. 30, 2011) ("[T]he exclusionary clause of § 1 of the [FAA] should be narrowly construed to apply to . . . workers actually engaged in the movement of goods in interstate commerce in the same way that

20

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

seamen and railroad workers are."), *vacated on other grounds*, *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173 (4th Cir. 2013); *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 482-83 (S.D.N.Y. 2008) ("[T]ransporting passengers interstate as part of a car service is too far removed from . . . being a member of an industry that primarily involves the actual, physical movement of goods through interstate commerce.").  This cases are materially the same as the case at bar.

The Third Circuit's recent non-binding decision in *Singh v. Uber Techs., Inc.*, 939 F.3d 210 (3d Cir. 2019)—referenced in Rogers's motion for preliminary injunction—does not compel a different result.  *See generally* Dkt. No. 8.  The Third Circuit in *Singh* did not decide that drivers on the Uber platform were transportation workers for purposes of the FAA, or that the FAA did not apply to those drivers.  The Third Circuit merely held that "the residual clause of § 1 [of the FAA] *may* extend to a class of transportation workers who transport passengers, so long as they are engaged in interstate commerce or in work so closely related thereto as to be in practical effect part of it."  *Singh*, 2019 WL 4282185 at *1 (emphasis added).  The Third Circuit remanded the case to the district court to determine whether the FAA's exemption applied to Uber drivers.  *Id.* at *13.  And as noted above, at least one court has answered that question in the negative and compelled arbitration.  *Scaccia*, 2019 WL 2476811 at **4-6.[16]

In sum, this Court should follow the lead of the Supreme Court and virtually every other court to have considered this issue and hold that the FAA's exemption for transportation workers does not apply to workers like Rogers who transport passengers rather than goods.

### 2.    In any case, Rogers never engaged in interstate commerce.

Even if the FAA's transportation worker exemption did apply to workers engaged in the interstate transportation of passengers, Rogers still would not qualify.  Rogers has ***never once*** crossed state lines while providing a ride using Lyft's platform.  Lieu Decl. ¶¶ 2-6.  And courts in this District agree that purely intrastate workers cannot fall within the FAA's transportation worker exemption.  *E.g.*, *Magana*, 343 F. Supp. 3d at 899-900; *Vargas v. Delivery Outsourcing,*

---

[16] Rogers cites *Rittman v. Amazon, Inc.*, 383 F. Supp. 3d 1196 (W.D. Wash. 2019), and *Waithaka v. Amazon, Inc.*, 404 F.Supp.3d 335 (D. Mass. 2019), but those cases analyzed whether workers "delivering ***physical products***, who do not themselves deliver items across state lines, fall within the exemption."  *Heller*, 2020 WL 413243, at *7 (emphasis added).

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

1   *LLC*, No. 15-CV-03408, 2016 WL 946112, at \*4–\*5 (N.D. Cal. Mar. 14, 2016) (Tigar, J.) ("The

2   evidence in this case, however, does not support the conclusion that [p]laintiffs made interstate

3   deliveries even occasionally . . . [the plaintiff's] argument that he is 'engaged in interstate

4   commerce' asks the Court to broadly read a term that requires a narrow construction.  The Court

5   declines the invitation, and concludes that [p]laintiff was not engaged in interstate commerce.").

6   Indeed, in a recent decision from the Central District involving drivers who use Uber to provide

7   rides to passengers, the court held that because the plaintiff-driver "never crossed state lines, that

8   he locally transported passengers, and that he was not part of a group engaged in foreign or

9   interstate commerce, he does not fall within the exemption."  *Heller v. Rasier, LLC*, No.

10  CV178545, 2020 WL 413243, at \*6 (C.D. Cal. Jan. 7, 2020); *accord Grice v. Uber Technologies,*

11  *Inc.*, No. CV182995, 2020 WL 497487, at \*\*7-8 (C.D. Cal., Jan. 7, 2020).  Even the Third Circuit

12  in *Singh* held that drivers must actually be engaged in interstate commerce for the exemption to

13  apply, and on that basis remanded the case.  939 F.3d at 226.  Rogers cannot make that showing.

14        **H.     The Court should stay this entire action pending the resolution of arbitration.**

15        When a dispute covered under an arbitration clause is brought in a suit in federal court, the

16  court must stay the action upon application of any of the parties.  9 U.S.C. § 3.  Where, as here,

17  the issues in the case are within the reach of the arbitration agreement, the district court has no

18  discretion to deny a stay.  *See Anderson v. Pitney Bowes, Inc.*, No. 04-CV-4808-SBA, 2005 WL

19  1048700, at \*2 (N.D. Cal. May 4, 2005) ("'If the issues in a case are within the reach of the

20  Agreement,' the court must, upon request by either party, grant a stay of the action pending

21  arbitration.") (quoting *In re Complaint of Hornbeck Offshore Corp.*, 981 F.2d 752, 754 (5th Cir.

22  1993)).  Lyft respectfully requests that the Court stay this action under Section 3 of the FAA.

23  That said, this Court has in the past elected to dismiss without prejudice such arbitrable actions.

24  *E.g.*, *Norton*, 2019 WL 4744691, at \*1 ("Although Lyft requested a stay of the action under 9

25  U.S.C. § 3, [the plaintiff's] claims are dismissed without prejudice.") (citing *Johnmohammadi v.*

26  *Bloomingdale's Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014)); *accord Brunner*, 2019 WL

27  6001945, at \*3.  Lyft would not object to a dismissal of this action without prejudice.

28  ///

22

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6

1   ///

2   ///

3   **IV.     CONCLUSION**

4          The Court should compel Rogers to arbitrate his claim under California Labor Code § 246

5   on an individual basis and stay this action pending the resolution of that arbitration.

6   Dated:  March 23, 2020                                     KEKER, VAN NEST & PETERS LLP

7

8                                               By:     /s/ R. James Slaughter
                                                        RACHAEL E. MENY
9                                                       R. JAMES SLAUGHTER
                                                        EUGENE M. PAIGE
10
                                                        Attorneys for Defendant
11                                                      LYFT, INC.

DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION
AND STAY ACTION PENDING RESOLUTION OF ARBITRATION
Case No. 4:20-cv-01938-VC

1376223.v6