SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
ANNE KRAMER (SBN 315131)
(akramer@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiffs John Rogers,*
*Amir Ebadat, and Hany Farag,*
*on behalf of themselves and all others*
*similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROGERS, AMIR EBADAT, and HANY FARAG, on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LYFT, INC., <br><br> Defendant | Case No. 3:20-cv-01938-VC <br><br> **PLAINTIFF'S OPPOSITION TO LYFT'S MOTION TO COMPEL ARBITRATION** <br><br> Judge: Hon. Vince Chhabria <br><br> Date Removed: March 19, 2020 <br> Complaint Filed: March 12, 2020 <br> Trial Date: None Set |

**Table of Contents**

I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................... 3

III.    ARGUMENT ....................................................................................................... 4

        A.   This Court Has the Authority to Adjudicate and Grant the Preliminary Injunction
             Despite the Pending Motion to Compel Arbitration.................................................... 4

        B.   Plaintiff's Claims Cannot be Compelled to Arbitration ............................................ 10

        1.   Plaintiff's Pursuit of Public Injunctive Relief Cannot (and Should Not) be Thwarted
             by Lyft's Arbitration Agreement, Pursuant to McGill.......................................... 10

        2.   Lyft Cannot Compel Arbitration as Lyft Drivers Fall Within the Transportation
             Worker Exemption of the FAA, 9 U.S.C. § 1 ...................................................... 14

        C.   Plaintiff's Claim for Injunctive Relief Should Not Be Severed, Nor Should This
             Action Be Stayed Pending Arbitration .................................................................. 20

IV.     CONCLUSION..................................................................................................... 22

## TABLE OF AUTHORITIES

### CASES

Alliance for the Wild Rockies v. Cottrell,

    632 F.3d 1127 (9th Cir. 2011) ....................................................................................15, 27

American Exp. Financial Advisors Inc. v. Thorley,

    147 F. 3d 229 (2d Cir. 1998)................................................................................................13

Auntie Anne's, Inc. v. Wang,

    2014 WL 11728722 (C.D. Cal. July 16, 2014) ...................................................................11

Bacashihua v. U.S. Postal Serv.,

    859 F.2d 402 (6th Cir. 1988) ..............................................................................................23

Braintree Laboratories, Inc. v. Citigroup Global Markets Inc.,

    622 F. 3d 36 (1st Cir. 2010).........................................................................................11, 12

Broughton v. Cigna Healthplans of California,

    21 Cal. 4th 1066 (1999) ..........................................................................................16, 17, 18

BrowserCam, Inc. v.Gomez, Inc.,

    2009 WL 210513 (N.D. Cal. Jan. 27, 2009) ......................................................................26

Christie v. Loomis Armored US, Inc.,

    2011 WL 6152979 (D. Colo. Dec. 9, 2011)........................................................................24

Chute v. Lyft, Inc.,

    CGC-18-571063 (Cal. Sup. Ct. March 29, 2019) ..............................................................15

Circuit City Stores, Inc. v. Adams,

    532 U.S. 105, 118 (2001)..............................................................................................20, 21

Clifford v. Quest Software Inc.,

    38 Cal. App. 5th 745 (Ct. App. 2019)................................................................................16

Clouser v. Ion Beam Applications, Inc.,

    No. C-03-5539 MHP, 2004 WL 540514 (N.D. Cal. Mar. 18, 2004) ................................12

Cole v. Burns Int'l Sec. Servs.,

    105 F.3d 1465 (D.C. Cir. 1997) ............................................................................................21

Colopy v. Uber Techs., Inc.,

    2019 WL 6841218 (N.D. Cal. Dec. 16, 2019) ......................................................................16

Cunningham v. Lyft, Inc.,

    Case No. 1:19-cv-11974-IT (D. Mass.) ............................................................................8, 11

Dealer Computer Service, Inc.. v. Ford,

    2012 WL 6054846 (E.D. Cal. Dec. 5, 2012)........................................................................11

Dist. Council 16 Int'l Union of Painters & Allied Trades v. LML Enterprises, Inc.,

    2013 WL 3802903 (N.D. Cal. July 18, 2013) ......................................................................27

Dynamex Operations W., Inc. v. Superior Court,

    4 Cal. 5th 903, 956–57 (2018), ........................................................................6, 12, 18, 19

*Easterday v. USPack Logistics, LLC*,

    Civ. Act. No. 1:15-cv-07559 (D.N.J. June 29, 2016)..........................................................25

EIG Global Energy Partners, LLC v. TCW Asset Management Co.,

    2012 WL 5990113 (C.D. Cal. Nov. 30, 2012)......................................................................11

Falcon Ventures, LLC v. Haystack Ventures International, LLC,

    C.D. Cal. July 24, 2017........................................................................................................11

Fidelity Brokerage Services LLC v. McNamara,

    2011 WL 2117546 (S.D. Cal. May 27, 2011)......................................................................11

Gonzalez v. Coverall North America Inc.,

    754 Fed. Appx. 594 (9th Cir. 2019) ....................................................................................28

Green Tree Fin. Corp.-Alabama v. Randolph,

    531 U.S. 79, 87 (2000).........................................................................................................27

Hamrick, et al. v. US Pack Holdings, LLC, et al.,

    6:19-cv-137 (M.D. Fla. August 15, 2019) ...........................................................................23

Harden v. Roadway Package Sys., Inc.

    249 F.3d 1137 (9th Cir. 2001) ............................................................................................20

Heller v. Rasier LLC,

    2020 WL 413243 (C.D. Cal. Jan. 7, 2020) ........................................................................24

Holyfield v. Julien Entertainment.com, Inc.,

    2012 WL 5878380 (C.D. Cal. Nov. 21, 2012) .................................................................11

In re Van Dusen

    (9th Cir. 2011) 654 F.3d 838 .........................................................................................20

Kowalewski v. Samandarov,

    590 F. Supp. 2d 477 (S.D.N.Y. 2008)............................................................................22

Lenz v. Yellow Transp., Inc.,

    431 F.3d 348 (8th Cir. 2005) .........................................................................................25

Lepera v. ITT Corp.

    1997 WL 535165 (E.D. Pa. 1997) .................................................................................21

Magana v. DoorDash, Inc.,

    343 F.Supp. 3d 891 (N.D. Cal. 2018) .......................................................................16, 23

McGill v. Citibank, N.A.,

    2 Cal.5th 945, 962 (2017) .................................................................................... passim

Muller v. Roy Miller Freight Lines, LLC,

    23 Cal. App. 5th 1056(Cal. Ct. Ap.. 2019) .....................................................................23

Next Step Medical co., Inc. v. Johnson & Johnson Intern.

    619 F.3 67 (1st Cir. 2010)...........................................................................................11, 12

Nieto v. Fresno Beverage Co., Inc.

    33 Cal. App. 5th 274 (2019) ...........................................................................................8

Nieto v. Fresno Beverage Co., Inc.,

    33 Cal. App. 5th 274 (Cal. Ct. App. 2019) ...................................................................23

Oliveira v. New Prime, Inc.,

    857 F.3d 7 (1st Cir. 2017)..............................................................................................20

Optum, Inc. v. Smith,

    360 F. Supp. 3d 52, 56 (D. Mass. 2019) ......................................................................11

Ortho Pharmaceutical Corp. v. Amgen, Inc.,

    882 F. 2d 806, 812 (3d Cir. 1989)...........................................................................................10, 12

*Palcko v. Airborne Express, Inc.*,

    372 F.3d 588 (3rd Cir. 2004) ..................................................................................................23, 25

People of the State of California v. Maplebear, Inc.,

    Case No. 2019-48731 (Cal. Sup. Ct. Feb. 18, 2020)..................................................................11

PMS Distributing Co., Inc.,

    863 F. 2d 639 (9th Cir. 1988) .........................................................................................................12

Rogers v. Lyft, Inc.,

    CGC-20-583684 (Cal. Sup. Ct.) ..............................................................................................8, 9

Scaccia v. Uber Techs., Inc.

    No. 3:18-CV-00418, 2019 WL 2476811 (S.D. Ohio June 13, 2019) ......................................22

*Siller v. L & F Distributors, Ltd.*,

    109 F.3d 765 (5th Cir. 1997) .........................................................................................................24

Singh v. Uber Techs.,

    939 F.3d 210 (3rd Cir., Sept. 11, 2019) ...........................................................................8, 21, 22

Teradyne v. Mostek Corp.,

    797 F. 2d 43, 47 (1st Cir. 1986)....................................................................................................12

Toyo Tire Holdings of Americas Inc. v. Continental Tire North America, Inc.,

    609 F. 3d 975, 980 (9th Cir. 2010)...................................................................................... passim

United States v. American Building Maintenance Industry,

    422 U.S. 271 (1975)........................................................................................................................23

Vargas v. Delivery Outsourcing,

    2016 WL 946112 (N.D. Cal. Mar. 14, 2016) .............................................................................23

Ward v. Express Messenger Sys. Inc. dba Ontrac,

    Civ. A. No. 1:17-cv-02005 (Jan. 28, 2019)...........................................................................24, 25

Zoll Circulation, Inc. v. Elan Medizintechnik, GMBH,

    2010 WL 2991390 (C.D. Cal. July 26, 2010) ............................................................................11

**STATUTES**

2014 California Assembly Bill No. 1522

    California 2013–2014 Regular Session, § 1(e) ................................................................18

Cal. Lab. Code § 246 ...........................................................................................................7

California Arbitration Act ("CAA")

    Cal. Code Civ. P. § 1281, *et seq* .......................................................................................26

Consumer Legal Remedies Act ("CLRA")

    Cal Civ. Code§§ 1750 et seq..............................................................................................18

Federal Arbitration Act ("FAA")

    9 U.S.C. § 1.................................................................................................................8, 25

**OTHER AUTHORITIES**

Braden Campbell

    *Calif. Gov. Signs Worker Misclassification Bill Into Law*, LAW360, Sept. 18, 2019............................................19

Lorena Gonzalez

    *The Gig Economy Has Costs. We Can No Longer Ignore Them.,* Wash. Post, Sept. 11, 2019 ............................19

## I.   <u>INTRODUCTION</u>

This case was brought on an expedited basis by Plaintiff John Rogers, seeking to obtain, in light of the current pandemic enveloping our country, an emergency preliminary injunction enjoining Defendant Lyft, Inc. ("Lyft") from misclassifying its drivers as independent contractors when they are actually employees under California law and thereby denying them state-mandated paid sick leave pursuant to Cal. Lab. Code § 246.  Plaintiff's request seeks public injunctive relief because he seeks to prevent future threatened harm to the public: rapid proliferation of COVID-19 ("the coronavirus"), since Lyft's failure to provide state-mandated sick pay for its drivers will cause them to continue to work *despite being sick with COVID-19 symptoms* because they simply cannot afford to stay home and not work.  Indeed, gig workers have already begun speaking publicly about how they have continued to work despite being sick, in direct contravention of public health advice aimed at containing the virus, because they need the money.  <u>See</u> Declaration of Shannon Liss-Riordan (Liss-Riordan Decl.) ¶ 8-9; <u>id.</u> Ex. 1 (Declaration of Martin El Koussa); <u>id.</u> Ex. 2 (Declaration of Vladimir Leonidas).

Lyft is now attempting to block Plaintiff from obtaining this emergency relief (or even the adjudication of this emergency request) by wielding its arbitration agreement.  Lyft urges that, despite the current crisis, "the rule of law still applies." Dkt 19 at 1.

Yet it is Lyft that has assiduously sought to evade the rule of law – for *years* now – by wielding its arbitration agreement to block even the adjudication of drivers' misclassification claims.  Under the "ABC" test enunciated by the California Supreme Court in <u>Dynamex Operations W., Inc. v. Superior Court</u>, 4 Cal. 5th 903, 956–57 (2018),

and subsequently codified by the California state legislature with the enactment of Assembly Bill No. 5 (AB 5), Lyft drivers are plainly employees under California state law.[1]  And

---

[1]       Lyft obviously recognizes that it is subject to this law, since it lobbied so hard for an exemption and has now vowed to pour $30 million into a ballot initiative aimed at partially repealing A.B. 5. Liss-Riordan Decl. ¶ 13-14.

there can really be no question that Lyft must therefore provide state-mandated paid sick leave to its drivers under Cal. Lab. Code § 246.

However, Lyft has simply refused to acknowledge that its drivers are employees under California law, has flouted the law by denying them Labor Code protections, and has evaded adjudication through strategically deploying its arbitration agreement to delay proceedings – a strategy that is now contributing to the global health crisis, as described in Plaintiff's motion for preliminary injunction. The Court cannot countenance such a strategy, and it need not.

This Court can and should address Plaintiff's pending Emergency Motion for Preliminary Injunction before this motion, given the exigency of the coronavirus pandemic, and not allow Lyft to wield its arbitration clause to thwart Plaintiff's pursuit of injunctive relief that would directly benefit the public by preventing the deadly spread of this disease. See McGill v. Citibank, N.A., 2 Cal.5th 945, 962 (2017).[2] Further, this Court is empowered to adjudicate Plaintiff's motion before reaching the question of arbitration.[3] See Toyo Tire Holdings of Americas Inc. v. Continental Tire North America, Inc., 609 F. 3d 975, 980 (9th Cir. 2010)

---

[2] Under McGill, Lyft can neither compel Plaintiffs' claims to arbitration (where public injunctive relief is unavailable), nor forestall this Court's consideration of Plaintiff's **emergency** motion for **preliminary** injunction, through use of its arbitration agreement. Any argument by Lyft to the contrary – that an injunction requiring Lyft to provide its drivers with the financial ability to stay home while sick (as required by California law – without the need for a diagnosis of coronavirus or quarantine order) – is in the nature of a private injunction cabined to a dispute between Lyft and its drivers must be rejected and, frankly, borders on frivolous. The State of California has declared a state of emergency and has mandated a shelter-in-place order, and the State Department of Public Health is pleading with its residents to avoid close contact with people who are sick and to stay "away from work, school, or other people if you become sick with respiratory symptoms like fever and cough." Liss-Riordan Decl. ¶ 6. To characterize Plaintiff's request for preliminary injunction as a private dispute between Lyft and its drivers runs counter to executive and public health agency warnings to heed COVID-19 as a collective crisis and to take critical measures to prevent the spread of the virus. See Part III.B.1.

[3] The Court also cannot allow the delegation clause to delay adjudication of the emergency preliminary injunction because delegation of the issue would itself thwart Plaintiff's pursuit of public injunctive relief. See Part III.A.

2

(following majority approach and empowering district courts to issue equitable relief despite a pending motion to compel arbitration). See Part III.A.[4]

Should, however, the Court choose to address Lyft's Motion to Compel Arbitration now, the motion should also be denied on another ground, which is that Lyft drivers are exempt from the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, as they fall within the transportation worker exemption to the Act. See Nieto v. Fresno Beverage Co., Inc. 33 Cal. App. 5th 274, 276-77 (2019); Singh v. Uber Techs., 939 F.3d 210 (3rd Cir., Sept. 11, 2019). See Part III.B.2.

Significantly, as set forth in Plaintiffs' motion for preliminary injunction, the Court at this juncture can grant Plaintiffs' motion (before considering Lyft's motion to compel) by deciding merely whether Plaintiffs have a "likelihood of success" in defeating Lyft's motion to compel arbitration; it need not finally decide the arbitrability of his claims in order to issue a preliminary injunction based on the _likelihood_ of success.

For the foregoing reasons, and as outlined further below, this Court should: (1) adjudicate Plaintiff's pending Emergency Motion for a Preliminary injunction before considering Lyft's Motion to Compel Arbitration; and (2) when it does reach Lyft's motion, deny it.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 2020, Plaintiff John Rogers brought this case on behalf of himself and other Lyft drivers throughout California, alleging that Lyft has misclassified its drivers as independent contractors, when in reality they are employees of Lyft and therefore entitled to employment protections under the California Labor Code, including paid sick leave. See Dkt.

---

[4]      Even in the absence the urgent public health crisis now presented by the coronavirus, a California Superior Court recently adjudicated **and granted** a motion for preliminary injunction enjoining the gig economy company Instacart from misclassifying its workers as independent contractors, **despite** a pending motion to compel arbitration. People of the State of California v. Maplebear, Inc., Case No. 2019-48731, at *2, 4 (Cal. Sup. Ct. Feb. 18, 2020), Dkt. 9.03.

Likewise, in Massachusetts, where a nearly identical case against Lyft and emergency motion are now pending, a federal court has stated it will hear the plaintiffs' preliminary injunction motion before adjudicating Lyft's pending motion to compel arbitration  – and indeed already **has** adjudicated and ruled on a previous preliminary injunction requested by plaintiffs, before deciding Lyft's already filed motion to compel arbitration. See Cunningham v. Lyft, Inc., Case No. 1:19-cv-11974-IT (D. Mass.); Liss-Riordan Decl. ¶ 16.

1.03 ¶ 2 (Complaint).[5]  On March 17, 2020, shortly after filing the complaint, Plaintiff filed an *ex parte* application for an emergency preliminary.  See Rogers v. Lyft, Inc., (Cal. Sup. Ct.) CGC-20-583684, Dkt. 1.06.  An *ex parte* hearing date was set for March 19, 2020, at 11:00 a.m.  Lyft waited until the moment the hearing was starting to remove the case to federal court.  See Dkt. 1.  All parties appeared for the *ex parte* hearing, including the presiding judge, to discover that, due to the removal, the application would not be heard.  Liss-Riordan Decl. ¶ 3.

On March 19, 2020, that same day, Plaintiff therefore revised his papers to submit his emergency motion for preliminary injunction pursuant to the Federal Rules of Civil Procedure in this Court.  Dkt. 9.  He then submitted an administrative motion on March 23, 2020, to expedite the briefing schedule on his motion.  Dkt. 13.  The same day, the Court set an expedited briefing schedule on the emergency motion, ordering Lyft's response due by March 27, 2020, and Plaintiff's reply due by March 30, 2020. Dkt. 18.

Later that day, Lyft filed this Motion to Compel Arbitration. Dkt. 19.  The Court set this motion on the same briefing schedule as Plaintiff's motion.  Dkt. 22.

## III. ARGUMENT

**A.** This Court Has the Authority to Adjudicate and Grant the Preliminary Injunction Despite the Pending Motion to Compel Arbitration[6]

---

[5]     Plaintiff has now amended the complaint to add two additional named plaintiffs and to add additional causes of action (for expense reimbursement and minimum wage damages).  Dkt. 24.  His emergency motion pertains only to the claim for sick pay.

[6]     Lyft protests that the complaint in this case has not yet been formally served. That does not prevent the Court from considering Plaintiff's motion, since Lyft clearly has all of the papers, and Plaintiffs have been diligently attempting service.  Liss-Riordan Decl. ¶ 17.

Further, Lyft has now removed this case to federal court, which demonstrates Lyft is in receipt of the papers.  See Team Enterprises, LLC v. W. Inv. Real Estate Tr., 2008 WL 4367560, at *3 (E.D. Cal. Sept. 23, 2008) (commenting that "statutory requirements are construed to uphold jurisdiction, rather than defeat it. As long as the defendant receives actual notice of the lawsuit, substantial compliance with the Code provisions governing service of summons will generally be held sufficient.")  Besides, Plaintiff filed a preliminary injunction motion, which by its nature may necessitate adjudication before completion of service, and is brought under exigent circumstances that have presented obstacles to service, which must be taken into consideration.  See, e.g., C.C.C.P. § 583.240(d) (extending time for service when service is "impossible, impracticable, or futile due to causes beyond the plaintiff's control").

4

As an initial matter, whether Plaintiff's claims are subject to arbitration is not a threshold issue that must decide before Plaintiff's emergency motion can be adjudicated.  Indeed, positioning the issue as a threshold matter is the litigation tactic that McGill was designed to protect against: a defendant wielding its arbitration agreement to thwart pursuit of urgently needed public injunctive relief, in order to prevent future threatened harm to the public.

Besides, a wealth of authority supports this Court's ability to issue a preliminary injunction pending arbitration, even in less urgent circumstances.  The Ninth Circuit has followed the majority approach in holding that district courts have the authority to issue preliminary injunctions despite pending arbitration.  See Toyo Tire Holdings of Americas Inc. v. Continental Tire North America, Inc., 609 F. 3d 975, 981-82 (9th Cir. 2010).[7]  District courts in

---

[7]    See also Janvey v. Aguire, 647 F. 3d 585, 593-95 (2d Cir. 2011) (affirming district court's authority to issue preliminary injunction before deciding the pending motion to compel arbitration); Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 51 (1st Cir. 1986) ("a district court can grant injunctive relief in an arbitrable dispute pending arbitration, provided the prerequisites for injunctive relief are satisfied. We believe this approach reinforces rather than detracts from the policy of the Arbitration Act"); Roso-Lino Beverage Distributors Inc. v. Coca-Cola Bottling Co. of New York, 749 F. 2d 124, 125 (2d Cir. 1984) (reversed district court's decision denying a preliminary injunction because the matter was to be referred to arbitration, "[t]he fact that a dispute is to be arbitrated...does not absolve the court of its obligation to consider the merits of a requested preliminary injunction"); Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F. 2d 806, 812, 814 (3d Cir. 1989) ("we hold that a district court has the authority to grant injunctive relief in an arbitrable dispute, provided the traditional prerequisites for such relief are satisfied."; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1052 (4th Cir. 1985); Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1380 (6th Cir. 1995) ("we adopt the reasoning of the First, Second, Third, Fourth, Seventh, and arguably the Ninth, Circuits and hold that in a dispute subject to mandatory arbitration under the Federal Arbitration Act, a district court has subject matter jurisdiction under § 3 of the Act to grant preliminary injunctive relief provided that the party seeking the relief satisfies the four criteria which are prerequisites to the grant of such relief"); Sauer-Getriebe KG v. White Hydraulics, Inc., 715 F.2d 348, 350 (7th Cir. 1983) (the "right to seek injunctive relief in court and its right to arbitrate are not incompatible"); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton, 844 F.2d 726, 727 (10th Cir. 1988); Optum, Inc. v. Smith, 360 F. Supp. 3d 52, 56 (D. Mass. 2019) ("[a]t least seven Courts of Appeals, including the First Circuit and the Third Circuit, have held that a district court has the inherent equitable power to issue a preliminary injunction to preserve the status quo pending arbitration in order to protect the ability of the arbitrator to provide meaningful relief if the plaintiff prevails in the arbitration.");  Next Step Medical co., Inc. v. Johnson & Johnson Intern., 619 F.3 67, 70 (1st Cir. 2010) ("[E]ven where preliminary relief is for the arbitrator, a district court retains power to grant an interim preliminary injunction, where otherwise justified, for the interval needed to resort to the arbitrator"); Braintree Laboratories, Inc. v. Citigroup Global Markets Inc., 622 F. 3d 36, 40 (1st Cir. 2010)  (ruled on preliminary injunction recognizing that "[d]istrict courts have the authority to issue injunctive relief even where resolution of the case on the merits is bound for arbitration").

this Circuit have issued preliminary injunctions pending motions to compel arbitration under this approach.[8]  See also note 4 (citing Maplebear, Inc., Case No. 2019-48731, at *2, Dkt. 9-3 (granting motion for preliminary injunction against Instacart for misclassifying workers before considering motion to compel arbitration); Cunningham v. Lyft, Inc., Case No. 1:19-cv-11974-IT (D. Mass.) (deciding preliminary injunction motion before motion to compel arbitration)).

Lyft has argued that a district court **only** has the power to issue a preliminary injunction pending arbitration (or prior to adjudicating whether the claims are subject to arbitration) when the preliminary injunction maintains the status quo.  See Dkt. 20, at 3.  However, there is no such "status quo" requirement.  The rationale undergirding the majority approach does not support this reading.   Courts **must** retain the ability to issue preliminary injunctions to prevent allowing one party exploiting the arbitration agreement in bad faith or for delay.  Language in this case law regarding preserving the status quo is mere *dicta* that should not be read as limiting.  Indeed, district courts have the authority under the majority approach to issue a preliminary injunction pending a motion to compel arbitration, irrespective of whether it maintains the status quo (and even where the arbitrator is empowered to provide such provisional relief).[9]

---

[8]     See Falcon Ventures, LLC v. Haystack Ventures International, LLC, 2017 WL 6940538 at *6 (C.D. Cal. July 24, 2017) (ruling on motion for preliminary injunction while motion to stay pending arbitration is pending in the court); Auntie Anne's, Inc. v. Wang, 2014 WL 11728722, at *16 (C.D. Cal. July 16, 2014) (allowing motion to preliminary injunction to be heard "as a motion for interim relief pending submission of the parties' dispute to arbitration"); Holyfield v. Julien Entertainment.com, Inc., 2012 WL 5878380, at *3 (C.D. Cal. Nov. 21, 2012) ("[a]n agreement to arbitration would not bar the Court from issuing a temporary restraining order"); Dealer Computer Service, Inc.. v. Ford, 2012 WL 6054846 at *1 (E.D. Cal. Dec. 5, 2012) (ruling on temporary restraining order while arbitration was pending); EIG Global Energy Partners, LLC v. TCW Asset Management Co., 2012 WL 5990113, at *2 (C.D. Cal. Nov. 30, 2012) (granting preliminary injunction despite pending arbitration proceedings); Fidelity Brokerage Services LLC v. McNamara, 2011 WL 2117546 at *2 (S.D. Cal. May 27, 2011) (granting preliminary injunction while expedited arbitration proceedings were pending); Zoll Circulation, Inc. v. Elan Medizintechnik, GMBH, 2010 WL 2991390 at *2 (C.D. Cal. July 26, 2010) (granting in part a preliminary injunction while arbitration proceeding).

[9]     See Ortho Pharmaceutical Corp.., 882 F. 2d at 812, 814 (holding that a district court's authority to grant injunctive relief in an arbitrable dispute "need not be limited to restoring parties precisely to their pre-litigation position without regard to the irreparable injury the movant faces"); Braintree Labs., Inc. v. Citigroup Glob. Markets Inc., 622 F.3d 36, 40–41 (1st Cir. 2010) (recognizing district court's ability to issue a mandatory injunction pending arbitration and analyzing the request under the traditional four-factors analysis);  Next Step Medical co., Inc. v. Johnson & Johnson Intern., 619 F.3d 67, 70 (1st Cir. 2010) ("[E]ven where preliminary

Second, and most importantly, Lyft cannot protest that enforcement of clear law here would upend the status quo. Lyft has been flagrantly violating the law for *years* now, particularly clearly since the issuance of Dynamex and the legislature's reaffirmation of the "ABC" test adopted in Dynamex with the passage of AB 5. Indeed, it is widely understood in California, and by the legislature, that A.B. 5 takes aim at Lyft and other gig economy companies' practice of misclassifying their drivers as independent contractors, and Lyft has implicitly acknowledged that the law requires it to reclassify its drivers (by fighting A.B. 5 so hard and now seeking to undo it through a ballot initiative). Lyft cannot ward off adjudication on the now-clear-cut question of its drivers' misclassification and then cry that having to comply with the law (which it simply refused to do during the nearly two years since Dynamex was decided) would upend the status quo. Lyft should already be complying with California's state-mandated paid sick leave law, and that *should be* the status quo. See infra Part III.B.1.

The circumstances presented here compel issuance of a preliminary injunction, notwithstanding the pending motion to compel arbitration. The Court's inability to issue a preliminary injunction now would allow Lyft to exploit its arbitration agreement to delay proceedings and fundamentally render any relief that any individual driver could obtain issued "useless" for protecting the general public good. Lyft has already demonstrated through its filings and litigation tactics in this action, that it seeks to use its arbitration clause to delay adjudication of the question of its drivers' misclassification and continue to flout the law – which is now contributing to a public health crisis. And this Court has already determined, in rejecting

---

relief is for the arbitrator, a district court retains power to grant an *interim* preliminary injunction, where otherwise justified, for the interval needed to resort to the arbitrator"); Clouser v. Ion Beam Applications, Inc., No. C-03-5539 MHP, 2004 WL 540514, at *5 (N.D. Cal. Mar. 18, 2004) (reviewing request for preliminary injunction while dispute was pending in arbitration

    Toyo Tire cited to and built upon its holding in PMS Distributing Co., Inc., 863 F. 2d 639, 641-42 (9th Cir. 1988), which explicitly adopted the majority approach as set forth by the First Circuit in Teradyne v. Mostek Corp., 797 F. 2d 43, 47 (1st Cir. 1986), which in turn does not include such limiting language ("[W]e are persuaded that the [majority] approach . . . should be followed. We hold, therefore, that a district court can grant injunctive relief in an arbitrable dispute pending arbitration, provided the prerequisites for injunctive relief are satisfied."). First Circuit case law, therefore, is particularly relevant in interpreting the Toyo Tire standard.

7

Lyft's request to extend the timeline of the briefing scheduled, that the urgency of the circumstances requires prompt action.  The Court should reject Lyft's gamesmanship.

Indeed, neither the Ninth Circuit nor the U.S. Supreme Court has addressed the question now squarely before this Court: when a public health crisis is being exacerbated by a defendant's actions and the defendant is try to avoid adjudication of its conduct (and, indeed, avoid complying with the law altogether) by wielding its arbitration agreement, is a district court empowered to grant emergency public injunctive relief?  The answer should certainly be yes. This answer is supported by the California Supreme Court in <u>McGill</u>, as well as the Ninth Circuit's decision in <u>Toyo Tires</u>.  This Court has the authority (and indeed the obligation[10]) to adjudicate and grant a preliminary injunction seeking public injunctive relief under such exigent circumstances.

Any award in arbitration would be "useless" because the injunctive relief Plaintiff requests is ***only*** available to Plaintiff through the judicial forum.  If Plaintiff is not allowed to proceed in Court, he will not be allowed to obtain the relief he seeks in his preliminary injunction motion ***at all***.  Forcing sick drivers to adjudicate (and enforce) their right to state-mandated paid sick leave one-by-one would be ineffective at addressing the public harm and would not enable even the individual driver to stop working as soon as he felt sick, much less subsequent drivers who fall ill with COVID-19.  Plaintiff seeks public injunctive relief, as described infra Part II.B.i, which is barred by the terms of Lyft's arbitration agreement, because it prohibits the arbitrator from providing "non-individualized relief." Dkt. 19 at 12-13.[11]  Thus, if ordered to arbitration, a meaningful award would be impossible.

---

[10]    See, e.g., <u>American Exp. Financial Advisors Inc. v. Thorley</u>, 147 F. 3d 229, 231 (2d Cir. 1998) ("the expectation of speedy arbitration does not absolve the district court of its responsibility to decide requests for preliminary injunctions on their merits. Nor is this duty affected by the pro-arbitration policy manifested in the FAA.") (internal citations omitted).

[11]    "The arbitrator shall have no authority to consider or resolve any Claims or issue any relief ***on any basis other than an individual basis*** . . . The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claims." Shah Decl., Ex. A § 17(b) (cited Dkt. 19 at 13) (emphasis supplied).

Further, if the Court were to enforce Lyft's delegation clause, as it urges, that would also defeat Plaintiff's emergency request for preliminary injunctive relief. If Plaintiff were to go before an arbitrator only to learn that he can return to court in order to proceed, he would have thus been delayed to such an extent that his pursuit of emergency public injunctive relief will have been functionally thwarted through Lyft's use of its arbitration agreement. And if the arbitrator were to hold that Plaintiff must proceed in arbitration, then he would be thwarted altogether from pursuit of public injunctive relief (since, under the terms of Lyft's arbitration agreement, public injunctive relief is unavailable to Plaintiff in the arbitration forum, only individual relief). Both of these outcomes not only contravene the California Supreme Court's holding in McGill, but Plaintiffs submit would be considered a misuse arbitration by the Ninth Circuit (in light of existing case law discussing the importance of maintaining a court's ability to grant preliminary injunctions pending arbitration, see Toyo Tires, 609 F. 3d at 981-82) and even by the Supreme Court, if faced with this question squarely. Thus, Lyft's delegation clause itself – not just its arbitration clause as a whole – would thwart Plaintiff's pursuit of public injunctive relief, and thus the arbitrability of Plaintiff's claims (and particularly the arbitrability of his preliminary injunction motion) must be decided by the Court, and not an arbitrator.

Accordingly, this Court is empowered to (and should) grant Plaintiff's Emergency Motion for a Preliminary Injunction, before reaching the question of whether Plaintiff's claims are subject to arbitration. If, however, the Court were to consider now Lyft's Motion to Compel Arbitration, it should (applying the preliminary injunction standard) simply make a preliminary decision that Plaintiff is *likely to succeed* ultimately in overcoming the arbitration clause (or, as the Ninth Circuit has put it, *raised a substantial question* on that issue, see Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–39 (9th Cir. 2011)). As set forth further below, Plaintiff is likely to succeed in overcoming arbitration – and the Court should deny Lyft's motion when it reaches it – because Lyft cannot wield its arbitration agreement to thwart the public injunctive relief Plaintiffs seek here, and Lyft drivers fall within the section 1 transportation worker exemption of the FAA.

9

**B. Plaintiff's Claims Cannot be Compelled to Arbitration**

    **1. Plaintiff's Pursuit of Public Injunctive Relief Cannot (and Should Not) be Thwarted by Lyft's Arbitration Agreement, Pursuant to McGill**

Lyft attempts to argue that "the relief Rogers seeks is squarely a private, not public injunction," and that Plaintiff therefore cannot rely on McGill. Def.'s Mot. at 14 (Dkt. 19). This argument is plainly incorrect. [12] First, Lyft misconstrues the analytical framework set forth in McGill for determining whether a request for injunctive relief is of a public or private nature. Second, Lyft misapplies the law to the facts and substantially downplays the risk that sick Lyft drivers pose to the public by continuing to work during the COVID-19 crisis.

First, regarding the correct legal standard for determining whether the relief sought is public or private in nature, under McGill, public injunctive relief is relief that "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." Id., at 955 (quoting Broughton v. Cigna Healthplans of California, 21 Cal. 4th 1066, 1077 (1999)). Lyft attempts to read into McGill and its progeny a stand-alone requirement that Plaintiff must show the public is *directly* benefitted by the injunctive relief, and not merely indirectly benefitted. Def.'s Mot. at 18 ("the question is who directly benefits from the requested injunction."). However, no such requirement exists.

And, in any event, the public *is* directly affected here. Lyft characterization of this risk as only "incidentally impact[ing]" the public is not a straight-faced argument. Def.'s Mot. at 18.[13]

---

[12]    Moreover, as discussed immediately above, an arbitrator is unable to provide public injunctive relief and to delegate this issue to the arbitrator would functionally thwart pursuit of public injunctive relief. Lyft cites to a California Superior Court case, see Def.'s mot. at 14 n. 12, that is **not** binding on this Court and is not controlling here and, furtheer, Plaintiff respectfully submits, was incorrectly decided. In Chute v. Lyft, Inc., CGC-18-571063 (Cal. Sup. Ct. March 29, 2019) (Ex. A to Dkt. 19.01), the Court summarily concluded the arbitrator should decide whether Plaintiff's claim for a public injunction (which was **not** brought forth as a preliminary injunction) should be decided by the arbitrator pursuant to the delegation clause, only briefly addressing the question in two sentences and foregoing any in-depth consideration of the question.

[13]    Lyft contends that Clifford v. Quest Software Inc., 38 Cal. App. 5th 745, 755 (Ct. App. 2019), review denied (Nov. 13, 2019), is "a nearly identical reclassification request and determine that it was one for private, not public, relief." Def.'s Mot. at 16 (Dkt. 19). Lyft also cites to Colopy v. Uber Techs., Inc., 2019 WL 6841218 at *2 (N.D. Cal. Dec. 16, 2019) and Magana v. DoorDash, Inc., 343 F.Supp. 3d 891, 901 (N.D. Cal. 2018), as reinforcing this conclusion. Id. at 16-17. However, in these cases, the courts rejected the public injunction

Lyft implores this Court to ignore the obvious (that sick drivers working during the coronavirus constitute a harm to the general public) and attempts to convince the Court that finding harm to the general public would require an unworkable "utilitarian analysis of the public welfare under the totality of the circumstances." Id. at 18-19.  This machination is patently false.  One need only refer to the host of shelter-in-place orders, including in this state, or headlines and public health advisories, to determine that Lyft drivers continuing to work during the coronavirus crisis – which Lyft's failure to provide drivers with state-mandated sick leave is exacerbating - constitutes a harm to the general public.[14]

Plaintiff plainly pursues relief that would "large[ly] benefit[] the general public."  Plaintiff reincorporates by reference previous arguments explicating the harm to the public, see

---

argument based on their conclusion that plaintiffs' request for an injunction against their misclassification as independent contractors did not constitute a "public injunction" because their attempt to obtain their own wages and reimbursement primarily affected themselves and the harm to the public was too attenuated.  Clifford, 38 Cal. App. 5th at 753 (""[t]he only express beneficiary of [the] requested injunctive relief is [the employee], and the only potential beneficiaries are [defendant's] current employees, not the public at large.") (quoted in Def.'s Mot. at 16); Magana, 343 F.Supp. 3d at 901 (referring to the public benefit as "derivate of and ancillary" to the benefit to employees); Colopy, 2019 WL 6841218 at *3 (quoting Magana and following its analysis).

Here, the connection between the plaintiffs' request for relief and the public good is far more clear; the harm to the public if injunctive relief is not issued here is far more stark.  Those rulings cannot stand for the more general proposition that workers seeking their rights under wage laws can never constitute a request for a public injunction.  Moreover, the Magana decision was appealed, see Magana v. DoorDash, Inc., Case No. 18-17232 (9th Cir.); that appeal has been placed on hold pending a proposed classwide settlement.  In a newly filed case based on the coronavirus pandemic that has been related to the Colopy case, Plaintiffs are seeking a renewed motion for injunctive relief, like they are here, based upon the emergency presented by the current emergency.

[14] Lyft's argument that it cannot be ordered to reclassify its drivers as employees because they provide essential services makes no sense.  Def.'s Mot. at 18 n. 15 (Dkt. 19) (alleging that reclassification "would disrupt Lyft's operations during the State's emergency response to the coronavirus, even though the State has already declared [drviers'] operations essential").  Of course, *many* essential workers are classified as employees, and there is no basis at all for Lyft to contend that it need not pay its drivers as the California Labor Code requires for employees, simply because they are "essential".  The fact that they are essential – and carrying out critical services in the midst of this crisis – should make it especially clear at this moment how they are deserving of protection – protections that were put in place by the legislature for the workers' benefit, as well as the public at large.  And in no event should Lyft's argument carry any weight that the State classifying transportation services – which includes Lyft drivers – as essential means that *sick* Lyft drivers should be encouraged to work.

Pltf's Emergency Mot. at 14-16 (Dkt. 9), and briefly summarizes the arguments here.[15]  Because

Lyft drivers do not have state-mandated paid sick leave, Lyft drivers will continue to work

despite feeling sick – which goes against public health recommendations to stay home *as soon as*

a person begins feeling sick *and* to maintain a six-foot distance to prevent the spread of COVID-

19 (which Lyft drivers cannot do in close quarters with passengers).  Liss-Riordan Decl. ¶ 10. In

short, Lyft drivers will inevitably contribute to the spread of COVID-19, if Lyft's

misclassification scheme and refusal to provide state-mandated paid sick leave is left unchecked.

Indeed, as in <u>Broughton</u>, a sick Lyft driver has "already been injured" (as he is already infected)

and the harm that remains is threatened harm to the public, as the driver risks infecting

passengers and proliferating the spread of the virus.  In the attached declarations, Lyft drivers

have already attested to becoming sick with COVID-19 symptoms (the harm is already inflicted

on these drivers) and being forced to continue working in order to make a living, due to Lyft's

lack of state-mandated paid sick leave.

　　　　Under <u>McGill</u>, courts must analyze whether the *statute* has a "public purpose" **and**

whether the relief sought would "by and large benefit[] the general public" and would benefit the

plaintiff only "incidentally" or in her capacity as "a member of the general public."  2 Cal.5th at

961.  For example, a consumer moving under the Consumer Legal Remedies Act ("CLRA") Cal

Civ. Code§§ 1750 et seq , "against a defendant's deceptive methods, acts, and practices

'generally benefit[s]' the public 'directly by the elimination of deceptive practices' and 'will ...

not benefit' the plaintiff 'directly,' because the plaintiff has 'already been injured, allegedly, by

such practices and [is] aware of them.'" <u>Id</u>. at 955 (citing <u>Broughton</u>, 21 Cal. 4th at 1082); <u>see</u>

<u>also</u> Def.'s Mot. at 14-15.  In <u>McGill</u>, the Court determined that a claim brought under Cal. Bus.

---

[15]　　　Relief that Plaintiff seeks under amended claims, <u>see</u> Dkt. 24 including expense
reimbursement and payment of minimum wage, also affect the public and entitles Plaintiff to
exemption from arbitration under <u>McGill</u>, as explained <u>infra</u>, Plaintiff's *emergency* motion for
preliminary injunctive relief, however, rests on the sick pay claim, in light of the current
coronavirus crisis.

& Prof. Code §§ 17203, 17353 ("the UCL") (which allows that "[a]ny person may pursue representative claims or relief on behalf of others") sought public injunctive relief.

The California Legislature has already made clear that the paid sick leave policy, as contained in Cal. Lab. Code § 246, directly benefits the public: "*paid sick days will have an enormously positive impact on the public health of Californians by allowing sick workers paid time off to care for themselves . . . reducing the likelihood of spreading illness to other members of the workforce*." 2014 California Assembly Bill No. 1522, California 2013–2014 Regular Session, § 1(e) (emphasis supplied).[16]

As with paid sick leave law, the California legislature has recognized that independent contractor misclassification and resulting wage and hour violations constitute a public harm, with the passage of 2019 California Assembly Bill No. 5, California 2019-2020 Regular Session ("AB 5"), which codifies the California Supreme Court's decision in Dynamex and the "ABC" test enunciated therein, and which has been dubbed the "gig labor bill," meant to deal a "body blow to gig economy players **like** Uber and **Lyft**" and remedy the harm to the public wrought by independent contractor misclassification.[17]

The legislature is, further, correct in ascertaining that remedying independent contractor misclassification directly benefits the public. As the bill recognizes, the practice of misclassifying Lyft drivers degrades the entire economy of the transportation industry and diminishes labor standards and wages of its drivers. The California state legislature also did not mince words: "The misclassification of workers as independent contractors has been a significant factor in the erosion of the middle class and the rise in income inequality." A.B. 5, §1(c).[18]

---

[16]    Moreover, Plaintiff has amended his complaint to add a claim under the UCL (for *inter alia*, Lyft's failure to provide drivers with paid sick leave as required by § 246), and the UCL is the same statute the Supreme Court found in McGill has a public purpose.

[17]    *See, e.g.,* Cheryl Miller, *Newsom Signs Landmark Gig Labor Bill, as Court Cases Loom*, THE RECORDER, Sept. 18, 2019 (attached as Ex. A); Braden Campbell, *Calif. Gov. Signs Worker Misclassification Bill Into Law*, LAW360, Sept. 18, 2019 (attached as Ex. B).

[18]    The bill's author, Lorena Gonzalez, put it thus: "California is home to more millionaires and billionaires than anywhere else in the United States. But we also have the highest poverty rate in the country. *One contributing factor is we have allowed a great many companies — including "gig" companies such as **Uber,** Lyft, DoorDash, Handy and others — to rely on a

13

Second, the misclassification does irreparable harm to the State of California coffers, as Lyft will continue to avoid its obligation to pay payroll taxes, premiums for workers compensation, Social Security, unemployment, and disability insurance. Id. § 1(b) (citing Dynamex).  California and its taxpayers continue to lose money every day that Uber continues its policy of misclassification.  The State and its taxpayers likewise lose money in the form of public assistance that is provided to Lyft drivers who cannot support themselves, due to their deprivation of the protections of the California Labor Code and Wage Orders.  Third, other businesses who must compete with the unfair business practices of Lyft, and who may comply or desire to comply with California law, are harmed by the illegal misclassification of Lyft drivers. AB 5 § 1(b).  Indeed, allowing companies like Lyft to avoid its responsibilities as an employer fuels a race to the bottom, making it difficult for competing companies to comply with their legal obligations as employers.  As a result, Plaintiff has shown that California taxpayers and the State will similarly suffer as a result of Lyft's misclassification scheme.[19]

Thus, Plaintiffs' claims seek public injunctive relief, and therefore Lyft's motion to compel arbitration must be denied, because such relief cannot be thwarted through the use of an arbitration clause.

## 2. Lyft Cannot Compel Arbitration as Lyft Drivers Fall Within the Transportation Worker Exemption of the FAA, 9 U.S.C. § 1

Lyft's Motion to Compel Arbitration must also be denied on the alternate ground that Lyft drivers are exempt from the FAA's scope under the transportation worker exemption,

---

contract workforce, which enables them to skirt labor laws, exploit working people and leave taxpayers holding the bag." Lorena Gonzalez, *The Gig Economy Has Costs. We Can No Longer Ignore Them.,* Wash. Post, Sept. 11, 2019 (attached as Ex. D) (emphasis supplied).

[19]     Lyft cites prior cases that rejected this argument that a company's failure to properly classify its workers and deprive them of benefits generally under the Labor Code causes a public harm, thus making a request for injunctive relief a "public injunction" under McGill.  For reasons described supra note 13, Plaintiff respectfully submits that these cases were incorrectly decided and have not yet received the benefit of appellate review.

pursuant to 9 U.S.C. § 1.[20]  To qualify for the Section 1 transportation worker exemption from the FAA, an individual: (1) must work for a business pursuant to a "contract of employment"; (2) be a "transportation worker"; and (3) be "engaged in interstate commerce." Harden v. Roadway Package Sys., Inc., 249 F.3d 1137, 1140 (9th Cir. 2001) (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 118 (2001)).

    **First**, Plaintiff meets the first prong of this exemption, as he has a "contract of employment" with Lyft, despite being classified as an independent contractor. New Prime, Inc. v. Oliveira, 139 S. Ct. 532, 538, 543-44 (2019) (holding that independent contractors are encompassed within "contracts of employment" and therefore may fall within the section 1 exemption).  Thus, the Court need not determine for purposes of this exemption whether Lyft drivers have been misclassified.

    **Second**, Lyft drivers are "transportation worker[s]".  As the Third Circuit recently decided, transportation workers who transport *passengers* (not only those who transport *goods*) may qualify under this second prong.  Singh v. Uber Technologies, Inc., 939 F.3d 210, 221 (3d Cir. 2019).[21]  As the Third Circuit's analysis in Singh makes clear, "nothing in the residual clause of § 1 suggests that it is limited to those who transport goods, to the exclusion of those who transport passengers" and "[i]n fact, the text indicates the opposite." Id.  Drivers transporting passengers in interstate commerce are no different than railroad workers and

---

[20]    The law is now clear that the applicability of the FAA is unequivocally for this Court to determine.  See Oliveira v. New Prime, Inc., 857 F.3d 7, 9, 15(1st Cir. 2017), cert. granted, 138 S. Ct. 1164 (2018), and aff'd, 139 S. Ct. 532 (2019) ("the applicability of the FAA is a threshold question for the court to determine before compelling arbitration under the Act" because "[i]f the FAA does not apply, private contracting parties cannot, through the insertion of a delegation clause, confer authority…that Congress chose to withhold.")  (internal quotations and citation omitted); see also In re Van Dusen (9th Cir. 2011) 654 F.3d 838, 843.

[21]    Lyft attempts to argue that its drivers cannot qualify for this prong of the Section 1 exemption because the exemption is limited to "those workers actually engaged in the movement of **goods** in interstate commerce." Dkt. 19 at 20 (citing Circuit City, 532 at 112, 1129) (emphasis supplied).  However, this dicta, taken out of context, does not mean that the exemption is confined to workers transporting goods as Lyft urges.  Circuit City was simply quoting another Circuit Court decision in noting that "[m]ost Courts of Appeals conclude the exclusion provision is limited to transportation workers, defined, *for instance*, as those workers " 'actually engaged in the movement of goods in interstate commerce.' " Circuit City, 532 U.S. at 112 (quoting Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1471 (D.C. Cir. 1997)) (emphasis added).

seamen who were just as likely to be transporting passengers as they were to be transporting

goods. As the Third Circuit noted:

> Uber cannot direct us to any contemporary statutes or sources that define the terms
> "seamen" and "railroad employees" to only include those who transport goods. To the
> contrary, in its efforts to offer a rationale for why Congress might have created a carve-
> out for seamen and railroad employees, the Circuit City Court referenced two
> contemporary statutes: the Transportation Act of 1920 and the Railway Labor Act of
> 1926. Circuit City, 532 U.S. at 121. Each purported to resolve disputes between carriers
> and their employees and, in so purporting, defined "carrier" to include "sleeping car
> compan[ies]," which are railway *passenger* cars.

Singh, 939 F.3d at 221 (emphasis added); see also Lepera v. ITT Corp., 1997 WL 535165, at *7

(E.D. Pa. 1997) ("It is simply nonsensical to exclude from coverage those workers engaged in

the direct transportation of goods, but not those engaged in the direct transportation of

passengers.").[22]

**Third**, Plaintiff and other Lyft drivers are "engaged in interstate commerce." Lyft

contends that Singh "merely held that 'the residual clause of § 1 [of the FAA] may extend to a

class of transportation workers who transport passengers, so long as they are engaged in

interstate commerce or in work so closely related thereto as to be in practical effect part of it,'"

Dkt. 19 at 21 (citing Singh, 939 F.3d at 214), and that Scaccia v. Uber Techs., Inc., 2019 WL

2476811, at *4 (S.D. Ohio June 13, 2019), has answered this "question in the negative," as

applied to gig economy drivers. Dkt. 19 at 21 (citing Scaccia, 2019 WL 2476811, at *4-6)

("When driving with Uber, Plaintiff transported passengers to and from, sometimes in interstate

commerce, but he did not transport goods in interstate commerce."). Scaccia, however, pre-

---

[22]     Uber argues that "nearly every court to consider whether the Section 1 exemption applies
to workers who transport only passengers, has answered in the negative." Dkt. 19.01 at 23.
However, these courts appear to have simply assumed that Section 1 could not apply to the
transportation of passengers without any substantive analysis, and all of the decisions predate the
Third Circuit's highly persuasive decision in Singh. For instance, in Scaccia v. Uber Techs., Inc.,
No. 3:18-CV-00418, 2019 WL 2476811, at *4 (S.D. Ohio June 13, 2019), the court relied on the
district court decision in Singh, which has since been *overturned*. Similarly, in Kowalewski v.
Samandarov, 590 F. Supp. 2d 477, 484 (S.D.N.Y. 2008), the court found "the involvement of
physical goods to be an indispensable element to being 'engaged in commerce in the same way
that seamen and railroad workers are[,]'" but the Kowalewski court relied entirely on dicta in
Circuit City that referred in passing to "transportation workers and their necessary role in the free
flow of goods." Kowalewski, 590 F. Supp. 2d at 484 (quoting Circuit City, 532 U.S. at 121). The
Kowalewski case reads far too much into passing dicta in Circuit City.

dates <u>Singh</u> (which was issued in September of 2019) and therefore cannot practically "answer the question" or be in conversation with the decision; indeed, <u>Scaccia</u> cites the now lower court's holding in <u>Singh</u> that the Third Circuit vacated and remanded. <u>Scaccia</u>, 2019 WL 2476811, at *4.  In any event, <u>Scaccia</u> is not binding on this court as a district court decision from outside this Circuit and, Plaintiff respectfully submits, is incorrectly decided.

Besides, Lyft has stated that since the pandemic of the coronavirus has driven down ridership, Lyft will begin delivering medical supplies and subsidized lunches, <u>see</u> Liss-Riordan Decl., Ex. 3 – both of which qualify as goods in the flow of interstate commerce under the transportation worker exemption (particular given that the medical supplies may presumably be provided by the federal government, manufactured in other states, or transported across state lines as necessary to aid neighboring states during the pandemic).  Lyft's legal arguments do not accord with its business development, which plainly recognize that Lyft drivers provide essential transportation services and are engaged in interstate commerce (indeed, as they have been called to mobilize in response to an indisputably *national* crisis).

Lyft nevertheless proceeds to argue that the exemption does not apply because the drivers are not "engaged interstate transportation of passengers," Dkt. 19 at 21, because Plaintiff Rogers never crossed state lines and therefore cannot come within the exemption. <u>Id</u>. (citing <u>Magana</u>, 343 F. Supp. 3d at 899-900, and <u>Vargas v. Delivery Outsourcing</u>, 2016 WL 946112, at *4-*5 (N.D. Cal. Mar. 14, 2016)).  However, there is no requirement in the language of Section 1 or the primary Supreme Court decision interpreting it that suggests drivers must literally cross states lines to qualify for the exemption; instead, where the goods or passengers they are transporting are "within the flow" of interstate commerce as part of a larger interstate journey, even intrastate trips can fall under the exemption.[23]  Indeed, numerous courts have held that

---

[23]     Indeed, in <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 106 (2001), the U.S. Supreme Court interpreted the phrase "engaged in commerce" to mean "*<u>engaged in the flow of interstate commerce</u>*…'" <u>Id</u>. at 117 (citing <u>United States v. American Building Maintenance Industry</u>, 422 U.S. 271, 283 (1975)) (emphasis added).  Elsewhere, the <u>Circuit City</u> Court again noted that the phrase "engaged in commerce" was a "term of art", citing to <u>Gulf Oil Corp. v. Copp Paving Co.</u>, 419 U.S. 186, 195 (1974) (phrase "engaged in commerce" "appears to denote

even a purely <u>intra</u>state trip can be part of a larger <u>inter</u>state journey in which the driver is "engaged in interstate commerce."[24]

Here, Lyft drivers <u>are</u> transporting "persons…within the flow of interstate commerce" every time they pick up or drop off a passenger at the airport, train station, or bus terminal, as the first or last leg of a larger "interstate" journey.  Even this type of <u>intra</u>state transportation of passengers can qualify Plaintiff and other Lyft drivers for the exemption where the drivers execute one leg of a larger flow of interstate travel.  Besides, whether Plaintiff individually crossed state lines is not the relevant inquiry; the inquiry is whether Plaintiff is part of a ***class*** of workers engaged in interstate commerce.[25]  What matters for purposes of the exemption is

only persons or activities *<u>within the flow of interstate commerce</u>*"). <u>Id.</u> at 117–18 (emphasis added); <u>see also id.</u> at 118 (citing <u>Gulf Oil Corp.</u>, 419 U.S. at 195 (noting that the "engaged in commerce" language "denote[s] only persons or activities within the flow of interstate commerce—the practical, economic continuity in the generation of goods and services for interstate markets and their transport and distribution to the consumer.")).

[24]    <u>See, e.g.</u>, <u>Nieto v. Fresno Beverage Co., Inc.</u>, 33 Cal. App. 5th 274, 281-85 (Cal. Ct. App. 2019), <u>reh'g denied</u> (Mar. 27, 2019) (<u>intra</u>state liquor delivery driver who transported items solely within California found to be exempt under Section 1); <u>Bacashihua v. U.S. Postal Serv.</u>, 859 F.2d 402, 405 (6th Cir. 1988) (postal worker, who made only intrastate deliveries, was engaged in interstate commerce); <u>Palcko v. Airborne Express, Inc.</u>, 372 F.3d 588, 593-94 (3rd Cir. 2004) (supervisor who merely supervised drivers making <u>intra</u>state deliveries in the "Philadelphia area" was exempt); <u>Rittmann v. Amazon.com, Inc.</u>, 383 F. Supp. 3d 1196, 1201 (W.D. Wash. 2019); <u>Waithaka v. Amazon.com, Inc.</u>, 2019 WL 3938053, *2-3 (D. Mass. Aug. 20, 2019) (holding "gig economy" last-mile delivery drivers for Amazon were exempt, even where deliveries occurred entirely within the state of Massachusetts); <u>Hamrick, et al. v. US Pack Holdings, LLC, et al.</u>, Civ. A. No. 6:19-cv-137 (M.D. Fla. August 15, 2019) Dkt.  88, at *4 (holding that delivery drivers who "predominately make local deliveries and rarely cross state lines in the ordinary course of their employment" were exempt under Section 1); <u>Muller v. Roy Miller Freight Lines, LLC</u>,  23 Cal. App. 5th1056, 1065-69 (Cal. Ct. Ap.. 2019) (holding that even though Plaintiff truck driver only transported goods within California and "was not personally transporting goods from state to state, he played an integral role in transporting those goods through interstate commerce. We therefore conclude [Plaintiff] is exempt from FAA coverage."); <u>Christie v. Loomis Armored US, Inc.</u>, 2011 WL 6152979, *3 (D. Colo. Dec. 9, 2011) (<u>intra</u>state currency delivery driver found to be exempt under Section 1); <u>Ward v. Express Messenger Sys. Inc. dba Ontrac</u>, Civ. A. No. 1:17 -cv-02005 (D. Co. Jan. 28, 2019), Dkt.  118 (<u>intra</u>state "last-mile" delivery driver who worked entirely within Colorado found to be exempt under Section 1).

[25]    While Plaintiff himself may not have crossed state lines while driving for Lyft, other Lyft drivers who are putative class members regularly cross state lines (as is obvious from the fact that the Lyft application does not forbid interstate trips).  Moreover, only minimal interstate commerce is needed for this prong; indeed, many courts have held that even occasional interstate trips are enough to qualify for the transportation worker exemption. <u>See</u> <u>Int'l Bhd. of Teamsters Local Union No. 50</u>, 702 F.3d at 957; <u>Cent. States, Se. & Sw. Areas Pension Fund</u>, 84 F.3d 988, 993 (7th Cir. 1996) (Section 1 exemption applied even where defendant was "primarily engaged

18

whether the goods or passengers transported by Lyft drivers are "within the flow of interstate commerce" in the sense that they are on a continuous journey, "having not yet come to rest at their final destination.[26]

Further, a number of courts have looked to factors set forth by the Eighth Circuit in <u>Lenz v. Yellow Transp., Inc.</u>, 431 F.3d 348 (8th Cir. 2005), in deciding whether the transportation worker exemption applies. These factors distill and provide guidance on what circumstances courts have held the exemption to apply (and not all factors need to be satisfied). Application of these "<u>Lenz</u> factors" favors applying the exemption here, as Lyft drivers satisfy a number of these factors. Lyft drivers are plainly in the transportation industry as drivers (first factor); are plainly directly responsible for the transportation (second factor); and their vehicles are central to their job, such that there is a complete nexus between Lyft drivers' job duties and use of their vehicles (sixth factor). Moreover, with the growing importance of the "gig economy" to the American economy, Plaintiff submits that, a strike by Lyft drivers and other similar gig workers could very well now disrupt the national economy (seventh factor).[27]

---

in local trucking and *occasionally* transports cartage across state lines") (emphasis added); <u>See, Siller v. L & F Distributors, Ltd.</u>, 109 F.3d 765, *2 (5th Cir. 1997) (finding interstate commerce where only "approximately 39% of the truckloads … contained some out-of-state products").. Likewise, the Section 1 exemption makes no distinction between how far one travels across state lines. <u>See, e.g.</u>, <u>Intern'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC</u>, 702 F.3d 954, 957 (7th Cir. 2012).

[26]    Lyft cites <u>Heller v. Rasier LLC</u>, 2020 WL 413243, at *6 (C.D. Cal. Jan. 7, 2020), for the proposition that Lyft drivers are not engaged in interstate commerce under this analysis. However, <u>Heller</u> itself acknowledges that its conclusion the exemption did not apply to the plaintiff Uber driver rests on unsteady grounds. <u>Id</u>. ("While there is not a clear definition or consensus of what constitutes a 'transportation worker' who is 'engaged in interstate commerce,' there are some guideposts.") Moreover, this decision fails to acknowledge (or weigh appropriately) that Congress's overriding concern in enacting the exemption was preventing potential disruption of commerce at a national level, which is accounted for under the seventh factor of the <u>Lenz</u> factors analysis, which has distilled the section 1 exemption into a multi-factor test and further supports applying the exemption here.

[27]    Under this prong, the relevant "class" of workers for the analysis is not simply workers for the company at issue, but all workers in that particular industry. In any event, Lyft (along with its rival Uber) have grown so large that it could be said that a strike by all gig economy workers (or even just "rideshare" drivers) could well disrupt the national economy. <u>Cf</u>. <u>Waithaka</u>, 2019 WL 3938053, at *4 ("I find that a strike by last-mile delivery drivers for Amazon would disrupt interstate commerce.")

For all these reasons, the Court should deny Lyft's motion to compel arbitration because Lyft drivers fall under the transportation worker exemption to the FAA.[28]

### C.  Plaintiff's Claim for Injunctive Relief Should Not Be Severed, Nor Should This Action Be Stayed Pending Arbitration

Should the Court follow Lyft's recommendation to sever Plaintiff's claims for damages pursuant to Cal. Lab. Code § 226, and compel the damages claim to arbitration (which Plaintiff submits would be incorrect[29]), the Court should deny Lyft's request to stay the remaining claim for injunctive relief.  See Dkt. 19 at 19.  As Lyft recognizes, "[i[t is [] within a district court's discretion whether to stay, for '[c]onsiderations of economy and efficiency,' an entire action, including issues not arbitrable, pending arbitration." BrowserCam, Inc. v.Gomez, Inc., 2009 WL

---

[28]    Because the FAA does not apply, and because Lyft's agreement does not provide for any state's arbitration law to govern its agreement in the absence of the FAA, see Dkt. 19.02 at 29, Lyft cannot compel arbitration of the drivers' claims.  A number of courts have concluded that, if an the agreement specifies that the FAA will apply to the arbitration provision and does not supply an alternate state's law to govern if the FAA does not apply, there is no meeting of the minds and no clear intent to arbitrate at all in the event the FAA does not apply. See Rittmann, 2019 WL 1777725, *5 (because in the absence of the FAA "it is not clear what law to apply to the Arbitration Provision or whether the parties intended the Arbitration Provision to remain enforceable in the event that the Arbitration Provision was found to be inapplicable, the Court finds that there is not a valid agreement to arbitration"); Ward v. Express Messenger Sys. Inc. dba Ontrac, Civ. A. No. 1:17-cv-02005, Order on Motion to Compel Arbitration, Dkt. 118 at 11-12 (D. Co. Jan. 28, 2019) (denying motion to compel arbitration because plaintiffs fell within transportation worker exemption); Nieto, 33 Cal. App. 5th at 285-86 (affirming trial court decision denying motion to compel arbitration because plaintiff fell within the transportation worker exemption); see also Easterday v. USPack Logistics, LLC, Civ. Act. No. 1:15-cv-07559, Order at 21-22, Dkt. 42 (D.N.J. June 29, 2016) (suggesting that where an arbitration clause states that the FAA shall govern, but does not provide for what state's arbitration law will govern in the event that the FAA is held not to apply, then the arbitration agreement will not be enforceable) (citing Palcko, 372 F.3d at 590-96).

Moreover, even if the Court were to decide that California law would apply, in the absence of the overlay of federal preemption under the FAA, Lyft's arbitration agreement cannot be enforced under California law, the California Arbitration Act ("CAA"), Cal. Code Civ. P. § 1281, et seq., because it contains a class waiver that would not pass muster under Gentry v. Superior Court, 42 Cal. 4th 443, 466 (2007).

[29]    As explained above, **none** of Plaintiffs' claims are subject to arbitration, because Lyft drivers fall within the section 1 transportation worker exemption and therefore these claims should not be severed and compelled to arbitration.  Should the Court find the exemption does not apply but Plaintiffs' public injunctive claim cannot be thwarted by Lyft's arbitration agreement pursuant to McGill, then Plaintiff still submits that the damages for paid sick leave should not be severed, as they are incidental to Plaintiff's primary pursuit of public injunctive relief under this claim.

210513, at *3 (N.D. Cal. Jan. 27, 2009) (citing United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd., 750 F.2d 1422, 1427 (9th Cir. 1985)).  A stay would not serve those considerations here.  Indeed, a stay would *even further* delay adjudication of Plaintiff's emergency motion.  Besides, avoiding adjudicating a preliminary injunction motion does not serve efficiency because deciding a preliminary injunction motion is merely an adjudication of the likelihood of success (not a final adjudication on the merits) and would therefore not be duplicitous of any arbitration proceeding.

By even asking for this alternative relief, Lyft appears to concede that this Court has the ability to grant Plaintiff's Emergency Motion and issue a preliminary injunction, and then hold for a later date a determination on how to proceed with the remainder of the case.  In other words, the Court can decide now that Plaintiff has made a showing of likelihood of success on the merits (or, under the more lenient Ninth Circuit standard, a showing of raising a serious question as to the merits, see Alliance for the Wild Rockies v. Cottrell, 632 F.3d at 1134–39) and defer final adjudication, both on the merits of Plaintiff's misclassification and paid sick leave claims and on Lyft's motion to compel arbitration.

However, if Plaintiff is correct (as Plaintiff submits) that Lyft drivers fall under the section 1 transportation worker exemption, then arbitration should not be compelled at all.  And if Plaintiff is correct (as Plaintiff also submits) that the public injunctive relief sought here cannot be thwarted by Lyft wielding its arbitration agreement, then the remainder of the case should not be compelled to arbitration, as the damages sought are incidental to the primary purpose of Plaintiff's claim, which is to seek public injunctive relief.

Lyft further requests that, should the Court determine that Plaintiff's claims are subject to arbitration (which they are not) that the Court should stay, rather than dismiss the action.  Again, as Lyft recognizes, district courts in the Ninth Circuit have discretion as to whether to stay proceedings or dismiss an action without prejudice when the Court has determined a valid agreement to arbitrate exists and the claims come within the scope of the agreement. Dkt. 19 at 22 (citing Norton v. Lyft, Inc., No. 19-CV-02025, 2019 WL 4744691, at *1 (N.D. Cal. Sept. 13,

2019) (citing <u>Johnmohammadi v. Bloomingdale's Inc.</u>, 755 F.3d 1072, 1073–74 (9th Cir. 2014)).[30]  Plaintiff respectfully requests that, in the event the Court were to grant Lyft's Motion to Compel, despite the arguments set forth herein, that the Court dismiss the claims without prejudice, so that Plaintiff may pursue immediate appeal, given the exigency of the circumstances and the urgency of the relief needed.  If a court stays, rather than dismisses, claims pending arbitration, a plaintiff cannot appeal the order compelling arbitration.  <u>See</u> <u>Green Tree Fin. Corp.-Alabama v. Randolph</u>, 531 U.S. 79, 87 n.2 (2000).[31]  Thus, Plaintiff requests that, in the event that the Court grants Lyft's motion, that the Court dismiss and enter final judgment, so that Plaintiff can appeal the Order.[32]

## IV. <u>CONCLUSION</u>

For the foregoing reasons, this Court should: (1) adjudicate Plaintiff's pending Emergency Motion for a Preliminary injunction first, as the Court is empowered to grant the injunction regardless of its decision on the instant motion; and (2) when it does reach Lyft's motion to compel arbitration, deny it.[33]

---

[30]  <u>See also</u> <u>Dist. Council 16 Int'l Union of Painters & Allied Trades v. LML Enterprises, Inc.</u>, 2013 WL 3802903, at *1 (N.D. Cal. July 18, 2013) ("courts have discretion under 9 U.S.C. § 3 to dismiss or stay claims that are subject to an arbitration agreement.") (citing <u>Sparling v. Hoffman Constr. Co.</u>, 864 F.2d 635, 638 (9th Cir. 1988)).

[31]  Should the Court deny Lyft's motion to compel arbitration, Lyft would have had an immediate right to appeal pursuant to 9 U.S.C. § 16.  Thus, it is only fair that, if the Court rules in Defendant's favor on the arbitration issue, the case should be dismissed, rather than stayed, so that Plaintiff may seek review of the ruling, particularly whereas here Plaintiff has diligently pursued *all* avenues of emergency relief and followed with an expedited briefing schedule.

[32]  Because of an unpublished decision of the Ninth Circuit in <u>Gonzalez v. Coverall North America Inc.</u>, 754 Fed. Appx. 594, 595 (9th Cir. 2019), Plaintiff requests that, should the Court grant Lyft's motion to compel arbitration, it not only dismiss the case, allowing for an appeal, but that it certify to the Ninth Circuit the question of whether Plaintiff's arguments in opposition to Lyft's motion to compel arbitration are correct.

[33]  Plaintiffs apologize and ask the Court's indulgence that they have exceeded the Court's standing order that motions and oppositions should be no more than 15 pages.  Because of the expedited nature of this briefing, Plaintiffs did not have time to seek leave to file additional pages; they have many important arguments to address; and they note that Lyft's motion was 22 pages.

Dated: March 25, 2020                     Respectfully submitted,

                                          JOHN ROGERS, AMIR EBADAT,
                                          and HANY FARAG, on behalf of themselves and all
                                          others similarly situated,

                                          By their attorneys,

                                          _/s/ Shannon Liss-Riordan_____
                                          Shannon Liss-Riordan, SBN 310719
                                          Anne Kramer, SBN 315131
                                          LICHTEN & LISS-RIORDAN, P.C.
                                          729 Boylston Street, Suite 2000
                                          Boston, MA 02116
                                          Telephone:    (617) 994-5800
                                          Facsimile:    (617) 994-5801
                                          Emails: sliss@llrlaw.com; akramer@llrlaw.com

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a copy of this document and all supporting

documents referenced herein were delivered via electronic filing CM/ECF system to counsel for

Defendants on March 25, 2020.

                                          */s/ Shannon Liss-Riordan*_____

                                          Shannon Liss-Riordan, SBN 310719

23